VULCAN MATERIALS CO. v. GUILFORD COUNTY BD. OF COMRS.

[115 N.C. App. 319 (1994)]

VULCAN MATERIALS COMPANY v. GUILFORD COUNTY BOARD OF COUNTY COMMISSIONERS

No. 9318SC750

(Filed 21 June 1994)

1. **Zoning § 71 (NCI4th)— proposed stone quarry—denial of special use permit—use not in harmony with area**

   Material, competent, and substantial evidence supported a decision by a board of county commissioners to deny petitioner's applications for special use permits to operate a stone quarry in an agricultural district on the ground that the evidence failed to show that the proposed use "will be in harmony with the area in which it is to be located and in general conformity with the plan of development of this jurisdiction and its environs" where the record discloses that the area surrounding the proposed quarry is entirely residential and agricultural; the closest non-residential use is over two miles away; the county's comprehensive plan reserves the area of the proposed quarry for residential uses; and the record does not disclose the existence of any industrial use of nearby land.

   **Am Jur 2d, Zoning and Planning §§ 803-806.**

2. **Zoning § 66 (NCI4th)— denial of special use permits—no showing of predisposition by board members**

   The decision of a board of county commissioners to deny petitioner's applications for special use permits to operate a stone quarry was not shown to be arbitrary on the ground that the board members were biased and predisposed to vote against the applications where comments in the record indicating that certain board members were going to vote to deny the permits were made after the evidence was presented, and there was no evidence in the record that any board member had made a fixed decision, prior to the hearing, to vote against granting the permits.

   **Am Jur 2d, Zoning and Planning §§ 974-978.**

Appeal by respondent from judgment entered 17 May 1993 in Guilford County Superior Court by Judge J. B. Allen, Jr. Heard in the Court of Appeals 12 April 1994.

*Patton, Boggs & Blow, by C. Allen Foster, Thomas J. Pooley, and Gary L. Beaver, for petitioner-appellee.*

*Guilford County Attorney's Office, by Jonathan V. Maxwell and J. Edwin Pons, for respondent-appellant.*

GREENE, Judge.

Appeal by Guilford County Board of County Commissioners (the Board) from judgment entered 17 May 1993 reversing the Board's decision not to issue special use permits to Vulcan Materials Company (Vulcan) and ordering that such special use permits be issued.

On 23 December 1991, Vulcan and other owners of approximately 235 acres of property in eastern Guilford County filed applications for special use permits with the Guilford County Planning Department to use the property for a stone quarry. Vulcan owned one of the five contiguous parcels of land, consisting of approximately 46 acres, and held valid options to purchase the remaining four parcels of land. Each of the other property owners identified Vulcan as their agent on the permit applications.

After a public hearing on 15 January 1992, the Guilford County Planning Board voted to deny the permit applications. Vulcan appealed this decision by requesting a *de novo* hearing before the Board of County Commissioners. The Board held a public hearing on 20 February 1992.

At this hearing, Vulcan presented competent and material evidence which in summary form reveals: the tract of land in question contains approximately 235 acres located between Birch Creek Road and Knox Road, which feed into Mount Hope Church Road; the land is located in an area zoned agricultural; a stone quarry is a permitted use in an area zoned agricultural upon receipt of a special use permit; the quarry pit will be approximately 300 feet deep, will initially occupy ten acres, and will eventually grow to occupy seventeen to twenty acres of the entire site; the quarry site will be surrounded by twenty to thirty-foot high landscaped berms, and the quarry pit will be surrounded by a six-foot high chain link fence topped with three strands of barbed wire; upon cessation of the operation of the quarry, which is estimated will last twenty years, the property will be reclaimed in accordance with the regulations of the State of North Carolina; the quarry will have no adverse effect on water resources and will not result in pollution of the ground water; the quarry will not cause or contribute to a reduction in air quality; ground vibra-

tions from blasting at the site will not be capable of causing damage to surrounding structures and blasting will not effect local wells; air concussion from blasting will be well within the limits allowable by the State of North Carolina and by the United States Bureau of Mines; noise levels, including noise from trucks, loaders and crushers, will be completely inaudible at most homes in the vicinity; traffic from the quarry would result in an additional 228 vehicle trips per day, 185 of which would be trucks, in the quarry's first year of operation; eventually, as production increases, the number of vehicle trips per day will rise to 400, with 345 of those being trucks; all trucks from the quarry would use Knox Road to access Mt. Hope Church Road, where 75% of the trucks would turn south and get on I-85, while the remaining 25% of the trucks would turn north onto Mt. Hope Church Road; the North Carolina Department of Transportation has plans to improve the interchange at I-85 and Mt. Hope Church Road, and Vulcan has agreed to work with the Department of Transportation on widening that portion of Knox Road from the site entrance west to Mt. Hope Church Road; and quarries do not adversely affect property values in neighboring areas.

Those opposed to the issuance of the special use permit offered competent and material evidence as follows in summary form: there are 119 homes within 3,000 feet, and 450 homes within one mile, of the quarry site; Mt. Hope Church Road, a two lane paved road, is traveled twice a day by ten school buses; the area immediately surrounding the quarry site is residential and agricultural, although a commercial business, Replacements Ltd., has a 100,000 square foot facility some 11,000 feet from the proposed quarry site; area residents obtain their water from wells which are generally 80 to 140 feet deep; the proposed quarry site is located in part of a watershed for a planned drinking water source; one area resident testified that when she put her home, which is located directly across from the site, up for sale and disclosed that a quarry was proposed for the site, no one even looked at the house; the Guilford County Comprehensive Plan adopted in 1986 reserves the area of the site for residential use; neighbors of a Vulcan quarry in Elkin, North Carolina, stated through affidavits that they have suffered broken windows, cracked walls, dried up wells, dust, noise and falling rocks as a result of the operation of that quarry; Vulcan was fined $10,000 by the United States Department of Labor for an incident in which a man was killed by flying debris from a quarry blast while mowing his lawn some 900 feet from a Vulcan quarry in Weston, Illinois; there are several quarries

already operating in Guilford County; and, according to the *National Environmental Journal,* Vulcan is the seventh worst emitter of toxic chemicals in the United States, based on air, water, land, underground, public sewage, and off-site releases.

After hearing the evidence, the Board denied the permit by a vote of 6-1. In denying the permit, the Board found that there was not credible evidence that the proposed use (1) was "consistent with the purposes of the District and compatible with surrounding uses," (2) would "not materially endanger the public health or safety," (3) would "not substantially injure the value of adjoining or abutting property," and (4) "will be in harmony with the area in which it is to be located and in general conformity with the plan of development of this jurisdiction and its environs."

After the Board denied the special use permits, Vulcan petitioned for a writ of certiorari to the Superior Court of Guilford County, pursuant to N.C. Gen. Stat. § 153A-340. The writ was granted, and after oral arguments and a review of the record of the hearing before the Board, the Superior Court held that the denial of the special use permits was not based upon material, competent, and substantial evidence in the record as a whole and, alternatively, was arbitrary and capricious. The court then reversed the denial of the special use permits and ordered the Board to issue permits for the entire 235 acre tract of land. From this judgment, the Board appeals.

Although the North Carolina Administrative Procedure Act (the Act) provides review only for agency decisions, N.C.G.S. § 150B-50 (1991), and local units of government are not within the definition of agencies, N.C.G.S. § 150B-2(1), the principles embodied in the Act "are highly pertinent" to appellate review of local government actions. *Coastal Ready-Mix Concrete Co. v. Board of Comm'rs of the Town of Nags Head,* 299 N.C. 620, 625, 265 S.E.2d 379, 382 (1980). Thus any court reviewing a special use permit issued by a county necessarily must determine if the decision is affected by any error of law; made upon unlawful procedure; comports with due process; is supported by competent, material, and substantial evidence in the whole record; or is arbitrary and capricious. *Id.* at 626, 265 S.E.2d at 383. In this case, we need review only the sufficiency of the evidence and whether the decision was arbitrary and capricious, because these are the only issues raised. *Utilities Comm'n v. Bird Oil Co.,*

302 N.C. 14, 21, 273 S.E.2d 232,236 (1981) ("The nature of the contended error dictates the applicable scope of review.").

---

The issues presented are therefore whether the Board's decision to deny the special use permits was (I) supported by material, competent, and substantial evidence; or (II) arbitrary and capricious.

I

[1] Pursuant to N.C. Gen. Stat. § 153A-340 (1991), Guilford County enacted a Development Ordinance which divided the county into numerous zoning districts. For each district the ordinance included a list of permitted uses, some of which were permitted "by right" and some permitted only upon receipt of a "special use permit." Applications for special use permits must first be processed by the Planning Board and, upon appeal, by the Board of County Commissioners. The application must be approved upon a finding by the Board that seven conditions are satisfied. Included among those conditions are: (1) "the use as proposed, or the use as proposed subject to such additional conditions as the owner may propose or the Planning Board may impose, is consistent with the purposes of the District and compatible with surrounding uses"; (2) "the use will not materially endanger the public health or safety if located where proposed and developed according to the plan submitted"; (3) "the use will not substantially injure the value of adjoining or abutting property, or that the use is a public necessity"; and (4) "the location and character of the use, if developed according to the plan submitted, will be in harmony with the area in which [it] is to be located and in general conformity with the plan of development of the Jurisdiction and its environs." Guilford County Development Ordinance § 3-13.4 (1992). Because all four of these findings are required for the issuance of the special use permit, if there is not competent, material, and substantial evidence to support any one of these findings, we must affirm the Board's denial of the special use permit. *Ghidorzi Constr., Inc. v. Town of Chapel Hill*, 80 N.C. App. 438, 441, 342 S.E.2d 545, 547, *disc. rev. denied*, 317 N.C. 703, 347 S.E.2d 41 (1986).

In this case, the Board's rejection of the finding that the "character of the use . . . will be in harmony with the area in which [it] is to be located and in general conformity with the plan of development of the Jurisdiction and its environs" is supported by competent, material, and substantial evidence. The record discloses that the area surrounding the proposed quarry is entirely residential and agricultural,

that the closest non-residential use to the proposed quarry site is the Replacements Ltd. facility which is located over two miles away, and that the Guilford County Comprehensive Plan of 1986 reserves the area of the proposed quarry site for residential uses. The record does not disclose the existence of any industrial uses of nearby land.

Vulcan contends that because "quarrying" is a permitted use within the context of the zoning ordinance, it necessarily is in "harmony with the area." We disagree. The inclusion of a use as a conditional use in a particular zoning district establishes a prima facie case that the permitted use is in harmony with the general zoning plan. 3 Arden H. Rathkopf and Daren A. Rathkopf, *The Law of Zoning and Planning* § 41.13, at 41-77 (1992) [hereinafter *Rathkopf*]; *Woodhouse v. Board of Comm'rs of the Town of Nags Head*, 299 N.C. 211, 216, 261 S.E.2d 882, 886 (1980); *Humble Oil & Refining Co. v. Board of Alderman of the Town of Chapel Hill*, 284 N.C. 458, 468, 202 S.E.2d 129, 136 (1974). If, however, competent, material, and substantial evidence reveals that the use contemplated is not in fact in "harmony with the area in which it is to be located" the Board may so find. *See* 3 Robert M. Anderson, *American Law of Zoning* § 21.13, at 682 (3d ed. 1986); 3 *Rathkopf* § 41.13, at 41-83; *see Triple E Assocs. v. Town of Matthews*, 105 N.C. App. 354, 358, 413 S.E.2d 305, 307-08, *disc. rev. denied*, 332 N.C. 150, 419 S.E.2d 578 (1992); *Piney Mountain Neighborhood Assoc., Inc. v. Town of Chapel Hill*, 63 N.C. App. 244, 251, 304 S.E.2d 251, 255 (1983); *People's Counsel for Baltimore County v. Mangione*, 584 A.2d 1318, 1322-23 (Md. App. 1991).

II

[2]  A decision denying a special use permit is arbitrary and capricious "if it clearly evinces a lack of fair and careful consideration or want of impartial, reasoned decisionmaking." *Joyce v. Winston-Salem State Univ.*, 91 N.C. App. 153, 156, 370 S.E.2d 866, 868, *cert. denied*, 323 N.C. 476, 373 S.E.2d 862 (1988).

Vulcan first argues that the decision is arbitrary because "the undisputed competent, material and substantial evidence appearing in the record contradicts the Board's findings." We reject this argument because we have held above that the evidence does support at least one of the findings of the Board.

Vulcan next contends that the decision is arbitrary because the Board members were "predisposed and biased" against them. Without question if any of the Board members "had made a fixed decision,

prior to the Board's hearing," to vote against the granting of the special use permit, the decision would have to be classified as arbitrary. *See Crump v. Board of Educ.*, 326 N.C. 603, 616, 392 S.E.2d 579, 586 (1990). In this case, although the record contains some comments which indicate that certain members of the Board were going to vote to deny the special use permits, these comments were made after evidence was presented, and there is no evidence in the record which discloses that any Board member had made a fixed decision, prior to the hearing, to vote against granting the special use permits.

Accordingly, the judgment of the Superior Court must be reversed.

Reversed.

Chief Judge ARNOLD and Judge MARTIN concur.