MANN MEDIA, INC. v. RANDOLPH CTY. PLANNING BD.

[142 N.C. App. 137 (2001)]

MANN MEDIA, INC., DOING BUSINESS AS OUR STATE NORTH CAROLINA; AND
BERNARD MANN, PETITIONER-APPELLEES v. RANDOLPH COUNTY PLANNING
BOARD, RESPONDENT-APPELLANT

No. COA99-1478

(Filed 6 February 2001)

**1. Zoning— special use permit—broadcast tower—proposed
use in harmony with area—failure to present competent,
material, and substantial evidence**

The trial court did not err by granting petitioners' application
for a special use permit to locate a broadcast tower based on its
conclusion of law that petitioners' proposed use is in harmony
with the area in which it is to be located as a matter of law since
it is a permitted use within the zoning district in which it is to be
located, because: (1) the record fails to show competent, ma-
terial, and substantial evidence to overcome petitioners' prima
facie showing of harmony; and (2) a county planning board can-
not deny applicants a permit solely based on its view that it would
adversely affect the public interest.

**2. Zoning— special use permit—broadcast tower—adverse
effects—speculative opinions—failure to present compe-
tent, material, and substantial evidence**

The trial court did not err by granting petitioners' application
for a special use permit to locate a broadcast tower based on its
finding of fact that petitioners' proposed tower would have no
substantial adverse effect on the value of adjoining or abutting
properties and its conclusions of law that opponents' testimony
of adverse effect on value was incompetent since it did not relate
to property adjoining or abutting petitioners' proposed site,
because: (1) no opponents owning property adjoining or abutting
petitioners' proposed tower site offered more than speculative
opinions that their property values would be affected; (2) the
opponents failed to present competent, material, and substantial
evidence of adverse effects on the value of adjoining or abutting
properties; and (3) petitioners' appraiser formed an expert opin-
ion that met the requirement for competent, material, and
substantial evidence that their proposed tower would have no
substantial adverse effect on the value of adjoining or abutting
properties even though his data failed to include adjoining or
abutting comparables.

Judge WALKER dissenting.

MANN MEDIA, INC. v. RANDOLPH CTY. PLANNING BD.

[142 N.C. App. 137 (2001)]

Appeal by respondent from judgment entered 17 August 1999 by Judge W. Erwin Spainhour in Randolph County Superior Court. Heard in the Court of Appeals 12 October 2000.

*Keziah, Gates & Samet, L.L.P., by Andrew S. Lasine, for petitioner-appellees.*

*Gavin Cox Pugh Etheridge and Wilhoit, LLP, by Alan V. Pugh and Robert E. Wilhoit, for respondent-appellant.*

McGEE, Judge.

Petitioners applied for a special use permit to locate a broadcast tower on certain land located in Randolph County. Following proceedings held on 10 November 1998, respondent denied petitioners' application. Pursuant to a writ of certiorari, the Randolph County Superior Court vacated and remanded the matter for a hearing *de novo,* because respondent had not specified its reason for the denial in the minutes of the meeting at which the action was taken.

Petitioners' application for a special use permit was heard on 10 June 1999 and was again denied by respondent in an order dated 24 June 1999. Petitioners' request for a writ of certiorari from the Randolph County Superior Court was granted, and a hearing was held on 2 August 1999. On 17 August 1999, the trial court vacated respondent's 24 June 1999 order denying petitioners' application for a special use permit and remanded the matter to respondent for entry of an order allowing petitioners' application. Respondent appeals.

The scope of the trial court's judicial review of respondent's denial of petitioners' application includes "[i]nsuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and . . . that decisions are not arbitrary and capricious." *Concrete Co. v. Board of Commissioners,* 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980). Respondent contends that the trial court improperly reversed respondent's conclusions that petitioners' "proposed use will substantially injure the value of adjoining or abutting property" and that "[t]he location and character of the use . . . will not be in harmony with the area in which it is to be located." As in *Concrete Co.,* the question on appeal before this Court "is not whether the evidence before the superior court supported that court's order but whether the evidence before the [county planning] board was supportive of its action." *Id.*

MANN MEDIA, INC. v. RANDOLPH CTY. PLANNING BD.

[142 N.C. App. 137 (2001)]

I.

[1] Respondent assigns error to the trial court's conclusion of law that "[b]ecause Petitioners' proposed use is a permitted use within the zoning district in which it is proposed to be located, it is in harmony with the area in which it is to be located as a matter of law." As our Court has stated with respect to special and conditional use permits:

> The inclusion of a use as a conditional use in a particular zoning district establishes a prima facie case that the permitted use is in harmony with the general zoning plan. If, however, competent, material, and substantial evidence reveals that the use contemplated is not in fact in "harmony with the area in which it is to be located" the Board may so find.

*Vulcan Materials Co. v. Guilford County Bd. of County Comrs.*, 115 N.C. App. 319, 324, 444 S.E.2d 639, 643 (1994) (citations omitted). The trial court must assess whether competent, material and substantial evidence supported respondent's conclusion that petitioners' proposed use was not in harmony with the area in which it was to be located.

"In civil cases, '[t]he burden is on the appellant not only to show error but to enable the court to see that he was prejudiced[.]' " *Hajmm Co. v. House of Raeford Farms*, 328 N.C. 578, 589, 403 S.E.2d 483, 490 (1991) (citation omitted). In order to overcome petitioners' *prima facie* showing of harmony, respondent must show that its conclusion of lack of harmony is supported by competent, material and substantial evidence. In *Vulcan*, we found competent, material and substantial evidence of lack of harmony in a proposed quarry where (1) the area surrounding the proposed quarry was entirely residential and agricultural; (2) the nearest non-residential use to the proposed quarry was a *commercial* facility over two miles away; and (3) the Guilford County Comprehensive Plan adopted in 1986 reserved the area of the site for residential use. *See Vulcan*, 115 N.C. App. at 323-24, 444 S.E.2d at 642.

In the present case, no evidence of a comprehensive plan for the county was presented before respondent. The record shows a feed and supply store abuts petitioners' proposed site, and three more commercial establishments appear to be located some 3,500 feet from the proposed tower. A broadcast tower owned by WFMY, even taller than petitioners' proposed 1,500-foot tower, stands 1.35 miles away,

and apparently there is a third tower within five miles of petitioners' proposed site.

Respondent based its conclusion of lack of harmony specifically on the "substantially greater" population density around the site of petitioners' proposed tower than around "sites for towers which have been previously approved by [respondent] for Special Use Permits." However, comparative evidence of population density in the record is limited to a map of the area surrounding the WFMY broadcast tower. While it is true that the WFMY map shows there to be only half as many houses within 1,500 feet of that taller tower than within 1,500 feet of petitioners' proposed tower, the relevance of a 1,500-foot circle is never explained. No evidence of population densities around any other towers approved by respondent appears in the record, nor any suitable explanation of the relationship between population density and a broadcast tower's harmony with an area.

"A board of commissioners 'cannot deny applicants a permit in their unguided discretion or, stated differently, refuse it solely because, in their view, [it] would "adversely affect the public interest." ' " *Woodhouse v. Board of Commissioners*, 299 N.C. 211, 217, 261 S.E.2d 882, 886 (1980) (citations omitted). We conclude that the record fails to show competent, material and substantial evidence to overcome petitioners' *prima facie* showing of harmony under *Vulcan.*

## II.

[2] Respondent also assigns error to the trial court's finding of fact that petitioners' "proposed tower would have no substantial adverse effect on the value of adjoining or abutting properties" and conclusions of law that opponents' testimony of adverse effect on value was incompetent because it did not relate to property adjoining or abutting petitioners' proposed site. Respondent argues that, if the testimony of adverse property value effects by opponents was incompetent, then petitioners' evidence of *lack* of adverse property value effect was similarly incompetent, because neither petitioners nor opponents introduced any evidence of actual adjoining or abutting property values. If petitioners' evidence was incompetent, then they failed to meet their burden of showing no adverse property value effects, *see Refining Co. v. Board of Aldermen*, 284 N.C. 458, 468, 202 S.E.2d 129, 136 (1974), and their application was properly denied.

MANN MEDIA, INC. v. RANDOLPH CTY. PLANNING BD.

[142 N.C. App. 137 (2001)]

In *Sun Suites Holdings, L.L.C. v. Board of Aldermen of Garner*, 139 N.C. App. 269, 533 S.E.2d 525, *disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000), two opponents to a conditional use permit testified concerning adverse property effects. The first, a resident of the neighborhood, testified that he would not have bought his house had he known of the petitioner's planned development and assumed the same would hold true for anyone buying his house, thus lowering its value. The second opponent, a real estate agent with clients in the neighborhood, testified that he felt that property values would go down in the neighborhood. Our Court has stated that "speculative opinions such as the foregoing fail to constitute substantial evidence." *Id.* at 278, 533 S.E.2d at 531 (citation omitted). Neither witness "presented any 'factual data or background,' such as certified appraisals or market studies, supporting their naked opinions." *Id.* (citation omitted). Neither owned property adjoining or abutting the proposed site, and neither testified specifically to the effect of the planned development on property adjoining or abutting the proposed site. We held that neither had provided substantial evidence of adverse effects to property values. *See id.*

In the present case, no opponents owning property adjoining or abutting petitioners' proposed tower site offered more than speculative opinions that their property values would be affected. A realtor opined that property values would be affected but was unable to provide any examples of affected sales of property adjoining or abutting other towers and acknowledged that she had taken no formal courses in real property appraisal. A builder testified that he was in the process of purchasing some seven lots in a subdivision abutting the proposed site and would walk away from the purchase if the tower was approved because of its adverse effect on property values, but for business reasons refused to specify which lots he was interested in and, thus, whether any of them were actually adjoining or abutting the proposed site. We conclude that, under *Sun Suites*, the opponents to petitioners' tower failed to present competent, material and substantial evidence of substantial adverse effects on the value of adjoining or abutting properties.

Respondent argues that, by the same logic, petitioners failed to present competent, material and substantial evidence as well. Petitioners' appraiser specifically opined that the tower would not have a substantial effect on adjoining or abutting property values, but acknowledged that the slow turnover in housing around other towers in Randolph County meant he did not have any actual before-and-

after comparables for such properties. The appraiser instead based his opinion on property farther away from the tower and compensated for the distance in his calculations. Under *Sun Suites*, respondent argues, the appraiser's opinion should be as incompetent as that of the tower's opponents.

However, because petitioners' appraiser is a professional appraiser whose skill was acknowledged even by the opponent realtor described above, we hold that his expert opinion will satisfy the requirement for competent, material and substantial evidence despite our holding in *Sun Suites*. We do not believe that Randolph County, in enacting an ordinance covering special use permits, intended to preclude approval of such permits whenever market data in the area failed to include adjoining or abutting comparables. We therefore hold that petitioners presented competent, material and substantial evidence that their proposed tower would have no substantial adverse effect on the value of adjoining or abutting properties.

Because we find that petitioners met their burden for approval of their special use permit application, and because we find that respondent's order denying the special use permit was not supported by competent, material and substantial evidence, we affirm the trial court's judgment vacating respondent's order and remanding the matter to respondent for entry of an order allowing petitioners' special use permit application.

Affirmed.

Judge HORTON concurs.

Judge WALKER dissents.

WALKER, Judge, dissenting.

The Randolph County Planning Board unanimously voted to deny petitioners' application for a special use permit based on the following findings in part:

2. The applicant does not own the land for which the permit is requested.

3. The proposed tower is to be constructed for speculative purposes, there being no contracts or leases for the use of the proposed tower, all in direct contravention of the applicant's tes-

MANN MEDIA, INC. v. RANDOLPH CTY. PLANNING BD.

[142 N.C. App. 137 (2001)]

timony at the first public hearing. The Board therefore finds that the proposed use is not a public necessity nor required to provide broadcast service for the Piedmont-Triad area.

4. The proposed tower is located within 1500 feet of 21 established residences and there are numerous other residences located in proximity to the proposed tower.

5. Conflicting evidence was presented concerning the probability of ice forming on and falling from the proposed tower, but the Board finds that ice has formed and fallen from the other towers within the county's zoning jurisdiction causing damage and is likely to do so from the proposed tower, and would therefore materially endanger the public safety where located because of the number and density of adjoining residences.

6. Evidence was presented showing that the site for the proposed tower was approved by the Federal Aviation Agency, but opposed by the Aviation Division of the North Carolina Department of Transportation. The Board finds that the construction of this tower could therefore constitute a hazard to general aviation operating from Johnson Air Field, and thus endangers the public safety.

7. The population density of the area immediately adjacent to and in the proximity of the site for the proposed tower is substantially greater than that of areas surrounding sites for towers which have been previously approved by this Board for Special Use Permits.

8. The population density of the Residential Agricultural zoning district within Randolph County varies widely in general, but is of lower density in areas adjacent to tall telecommunication towers constructed after the adoption of the Unified Development Ordinance, and therefore this proposed site being in a high density RA district because of its size, visual impact and lighting and further because the required conditions and specifications set out in the ordinance are insufficient to harmonize this particular site (emphasis added) with the area, it is therefore not in harmony with the area.

9. Conflicting testimony was presented as to whether the issuance of the permit and the construction of the tower would substantially diminish the value of adjacent properties. The Board finds that the value of adjacent properties to the proposed

site would substantially diminish and would be injured if the special use permit were issued.

Based on the Board's findings, it concluded:

1. The purposed [sic] use will material [sic] endanger the public safety if located where proposed, and developed according to the plan as submitted and approved. (F.F. No. 4,5, and 6)

2. The proposed use will substantially injure the value of adjoining or abutting property, and the use is not a public necessity. (F.F. No. 3 and 9)

3. The location and character of the use if developed according to the plan as submitted and approved will not be in harmony with the area in which it is to be located. (F.F. No. 7 and 8)

In its order, the trial court found: "Petitioners' proposed use will be in harmony with the area in which it is to be located and in general conformity with the land development plan for Randolph County and the Randolph County Zoning Ordinance." However, the majority opinion states "In the present case, no evidence of a comprehensive plan for the county was presented before respondent." There was plenary evidence before the Board that this tower would be located adjacent to an existing mixed suburban/agricultural area and would not be in harmony with this area.

In *Vulcan Materials Co. v. Guilford County Bd. of Comrs.*, 115 N.C. App. 319, 324, 444 S.E.2d 639, 643 (1994), this Court held:

[2] A decision denying a special use permit is arbitrary and capricious 'if it clearly evinces a lack of fair and careful consideration or want of impartial, reasoned decisionmaking.' *Joyce v. Winston-Salem State Univ.*, 91 N.C. App. 153, 156, 370 S.E.2d 866, 868, *cert. denied*, 323 N.C. 476, 373 S.E.2d 862 (1988).

From a review of the record and the findings of the Board, I conclude there was competent material and substantial evidence to support the denial of the special use permit and I would reverse the order of the trial court and remand the case for entry of an order affirming the decision of the Board.