HABITAT FOR HUMANITY OF MOORE COUNTY, INC. v. BOARD OF
COMMISSIONERS OF THE TOWN OF PINEBLUFF

No. COA07-406

(Filed 18 December 2007)

**1. Zoning— conditional use permit—standing to contest**

Habitat had a substantial interest affected by the Board of Commissioner's decision in a conditional use permit case where there was testimony that Habitat had a contract to purchase the

property and the Commission found the application for the permit to be complete.

**2. Zoning— conditional use permit—requirements of unified development ordinance—prima facie harmony with area**

The trial court did not err by reversing the Board of Commissioner's denial of a conditional use permit where the Commissioners found that Habitat's plans met the requirements of the unified development ordinance, which established a prima facie case of harmony with the area. The fact that the proposed development has not already taken place is not sufficient to rebut a prima facie showing of harmony.

**3. Judges— orders—printed on law firm stationery**

Lawyers are discouraged from submitting and judges from signing orders printed on attorneys' ruled stationery bearing the name of the law firm, as this could call the impartiality of the court into question.

Appeal by respondents from judgment entered 4 January 2007 by Judge James M. Webb in Moore County Superior Court. Heard in the Court of Appeals 30 October 2007.

*Gill & Tobias, LLP, by Douglas R. Gill, for petitioner-appellee.*

*The Brough Law Firm, by William C. Morgan, Jr., for respondent-appellant.*

STEELMAN, Judge.

Habitat of Moore County, Inc. (Habitat)'s conditional use permit application was determined by the Board of Commissioners of the Town of Pinebluff (Commissioners) to be complete, and it had standing to appeal Commissioners' denial of the permit. Habitat's proposed subdivision was in compliance with the zoning requirements of Commissioners' Unified Development Ordinance, and there was insufficient evidence to rebut the presumption of harmony with the area. Thus, the trial court did not err in reversing Commissioners' decision.

## I. Factual Background

On 26 June 2006, petitioner Habitat submitted an application for a conditional use permit ("CUP") to develop a 75-lot subdivision. The Planning Board for the Town of Pinebluff met on 27 July 2006 and rec-

ommended approval of the permit. A public hearing was held on 17 August 2006 before respondents Commissioners. At this hearing, Habitat's executive director Elizabeth Cox (Cox) testified and was subjected to cross-examination. Numerous adjacent and neighboring property owners also testified. At its 21 September 2006 meeting, Commissioners found Habitat's application to be complete. Commissioners further found that the proposed development would meet the requirements of the R-30 zoning under the Pinebluff Unified Development Ordinance (the "Pinebluff UDO"). Commissioners then voted to deny the permit.

Habitat filed a petition for writ of certiorari in Moore County Superior Court on 16 October 2006. On that date, the trial court entered an order granting the petition and directing that the record of the proceedings be brought before the court. On 4 January 2007 Judge Webb entered an order reversing the decision of Commissioners and remanding the matter back to Commissioners for issuance of the CUP. Commissioners appeal.

## II.  Standing

[1] In their first argument, Commissioners contend that the trial court erred by concluding that it had jurisdiction over the parties and subject matter involved in this case. We disagree.

"Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Aubin v. Susi*, 149 N.C. App. 320, 324, 560 S.E.2d 875, 878 (2002) (citation omitted). As the party invoking jurisdiction, plaintiffs have the burden of establishing standing. *Neuse River Found. v. Smithfield Foods*, 155 N.C. App. 110, 113, 574 S.E.2d 48, 51 (2002) (citation omitted). This Court in *Street v. Smart Corp.* defined standing as follows:

> Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter. . . . The gist of standing is whether there is a justiciable controversy being litigated among adverse parties with substantial interest affected so as to bring forth a clear articulation of the issues before the court.

*Street v. Smart Corp.*, 157 N.C. App. 303, 305-06, 578 S.E.2d 695, 698 (2003) (internal citations and quotations omitted).

Section 48 of Pinebluff's UDO governs who may submit zoning permit applications, and states that:

> Applications for zoning, special-use, conditional-use, or sign permits or minor subdivision plat approval will be accepted only from persons having the legal authority to take action in accordance with the permit or the minor subdivision plat approval. By way of illustration, in general this means that applications should be made by the owners or lessees of the property, or their agents, or persons who have contracted to purchase property contingent upon their ability to acquire the necessary permits under this ordinance, or the agents of such persons . . .

The section further states:

> The administrator *may* require an applicant to submit evidence of his authority to submit the application in accordance with the Subsection (a) whenever there appears to be a reasonable basis for questioning this authority.

(emphasis added).

Commissioners argue that, since Habitat was not the owner of the property, and since it did not present a contract showing a purchase agreement contingent upon the approval of the CUP, Habitat had no stake in the matter and therefore did not have standing. This is not correct. Section 48 clearly indicates that a party need not be the owner of the property in order to submit an application. Moreover, an affirmative showing of a contract to purchase the land is unnecessary unless required by the administrator.

Cox testified at the 17 August 2006 public hearing that Habitat had a contract to purchase the property. The Commissioners did not request additional evidence of Habitat's authority to submit the application, and instead found the application to be complete. The application indicated that the purpose for applying for the CUP was "[t]o develop . . . 75 R-30 Habitat for Humanity homes."

Although Commissioners correctly note that the property owner did not sign the application, this is irrelevant in light of their finding that Habitat's application was complete. Further, the record contains evidence that Habitat had an option to purchase the property at the time it submitted the application.

Habitat had a "substantial interest affected" by Commissioners' decision and it complied with the provisions of the UDO in applying for a CUP. We hold that Habitat had standing in this matter, and that the trial court correctly concluded that it had jurisdiction over the parties and the subject matter. This argument is without merit.

### III. Trial Court's Conclusions of Law

**[2]** In their second argument, Commissioners contend that the trial court erred in reversing their denial of the CUP. Commissioners argue that their decision was supported by competent, substantial, and material evidence, and was not arbitrary and capricious. We disagree.

Article IV of Pinebluff's UDO governs "Permits and Final Plat Approvals." Section 54 of this article states that the permit shall be issued unless (1) the requested permit is not within [the town board's] jurisdiction according to the table of permissible uses, (2) the application is incomplete, or (3) the proposed development will not comply with one or more requirements of [the UDO]. Further, subsection (d) states that:

> Even if the permit-issuing board finds that the application complies with all other provisions of this chapter, it may still deny the permit if it concludes . . . that if completed as proposed, the development, more probably than not:
>
> (1) Will materially endanger the public health or safety, or
>
> (2) Will substantially injure the value of adjoining or abutting property, or
>
> (3) Will not be in harmony with the area in which it is to be located, or
>
> (4) Will not be in general conformity with the land-use plan, thoroughfare plan, or other plan officially adopted by the Board of Commissioners.

Under North Carolina case law, where a use is included as a conditional use in a particular zoning district, a *prima facie* case of harmony with the area is established. *Vulcan Materials Co. v. Guilford County Bd. of County Comm'rs*, 115 N.C. App. 319, 324, 444 S.E.2d 639, 643 (1994). Once this *prima facie* case is established, Commissioners may still find that the use will not be in harmony with the area only if there is competent, material, and substantial evidence to support such a finding. *Id.*

At the 21 September 2006 meeting, Commissioners found that Habitat's plans for its proposed development met the requirements of the R-30 zoning in the UDO. Nevertheless, a motion was made and passed by a 3-2 vote to deny the CUP on the grounds that:

[I]t will endanger the public health for the following reasons. There has not been enough of a traffic study. We do not know— there's a question on whether or not the safety of the citizens can be protected down there . . . I also think that it will not be in harmony with the area.

On appeal, Commissioners do not contend that Habitat's proposed development would endanger public health or safety. Instead, Commissioners only argue that there was competent, material, and substantial evidence in the record to support their finding that the subdivision would not be in harmony with the area.

In support of their contention, Commissioners reference four pieces of testimony from the 17 August 2006 public hearing which they claim "show[] clearly that the project would not be in harmony with the area[.]"

The first was from a woman expressing apprehension that her property "will be destroyed by trash dumping and riding four-wheelers and things like that." The second was a speaker who stated his concern about children in the proposed Habitat development spooking his horses. The third was a speaker who stated that "we do not want a subdivision built in there." Finally, the last piece of testimony cited by Commissioners is from a neighboring landowner, whose land does not abut the proposed Habitat development, stating "[I]t would be a lot nicer obviously if it went into five, ten-acre tracts or something like that."

After Habitat made its *prima facie* showing of harmony by demonstrating the proposed development's conformity with the R-30 zoning requirements of the Pinebluff UDO, the burden was on the opponents of the permit to show that the proposed development was not in harmony with the area. The gist of the opponents' objection is that they did not want the rural nature of their property to be compromised by a subdivision. However, under North Carolina jurisprudence, the fact that the proposed development in a CUP application has not already taken place on land is insufficient to rebut a *prima facie* showing of harmony. *See Vulcan*, 115 N.C. App. 319, 444 S.E.2d 639. Thus, to the extent that the objections to the proposed development centered on the fact that the land had not already been developed, these objections were insufficient to rebut Habitat's *prima facie* showing of harmony. No objections on any other basis were made, and we agree with the trial court's conclusion of law that there was insufficient evidence of a competent, material and substantial nature to rebut Habitat's showing of harmony with the area.

Because we affirm the trial court's order on the basis that the Commissioners' decision was not supported by competent, material, and substantial evidence, we need not address whether the decision was arbitrary and capricious.

### III.  Order

**[3]**  We note that Judge Webb's order was printed, signed and filed on the ruled stationery of Habitat's trial attorney. Without deciding whether this practice violates either the Code of Judicial Conduct or the Revised Rules of Professional Conduct, we strongly discourage lawyers from submitting or judges from signing orders printed on attorneys' ruled stationery bearing the name of the law firm. Such orders could call into question the impartiality of the trial court. *In re T.M.H.*, 186 N.C. App. 451, —— S.E.2d —— (2007).

AFFIRMED.

Judges WYNN and GEER concur.