BRYANT, Judge.
*306 Where petitioners were unable to show they were entitled to a special use permit for their proposed tower which was determined to not be in conformity with the county's plan of development and not in harmony with the area, the Board's denial was proper, and the Superior Court utilized the appropriate standard of review in upholding the Board's decision. Further, where the Superior Court properly applied the appropriate standard of review, we affirm the order of the Superior Court.
On 18 November 2013, petitioners Larry W. Edwards and Shirley M. Edwards, on behalf of Davidson County Broadcasting Company, Inc., (the Broadcasting Company) filed an application for a special use permit with the Iredell County Zoning Board of Adjustment (the Board or the Board of Adjustment). Per the application, the Broadcasting Company broadcast an FM radio signal from a 1,014-foot tower in Davidson *307 County and proposed the construction of a 1,130-foot lattice radio tower, plus a sixty-foot antenna, in Iredell County, on the property of Larry W. Edwards and Shirley M. Edwards. The Edwards owned 133 acres of property, with 91.07 acres located in Iredell County. The property was "zoned R-A (Residential Agricultural District)." Per the Iredell County Land Development Code, radio transmission towers greater than 300 feet were eligible for placement on R-A property, with the approval of a special use permit by the Board of Adjustment. The Broadcasting Company asserted the following as factors relevant to the issuance of the special use permit:
(A) THE USE REQUESTED, I.E. A RADIO TOWER IS AN ELIGIBLE SPECIAL USE IN A R-A DISTRICT IN WHICH THE EDWARDS' PROPERTY IS LOCATED.
...
(B) THE SPECIAL USE "WILL NOT MATERIALLY ENDANGER THE PUBLIC HEALTH OR SAFETY" IF LOCATED ON THE EDWARDS' PROPERTY AS PROPOSED ON THE ATTACHED SITE PLAN AND DEVELOPED ACCORDING TO THE PROPOSED PLAN.
...
(C) THE PROPOSED SPECIAL USE MEETS ALL REQUIRED CONDITIONS AND SPECIFICATIONS OF THE IREDELL COUNTY LAND DEVELOPMENT CODE....
...
(D) THE CONSTRUCTION, OPERATION AND MAINTENANCE OF THE RADIO TOWER AS HEREIN DESCRIBED, WILL NOT SUBSTANTIALLY INJURE THE VALUE OF ADJOINING OR ABUTTING PROPERTY.
...
*666 (E) THE LOCATION AND CHARACTER OF THE SPECIAL USE, DEVELOPED ACCORDING TO THE PROPOSED PLAN ... IS IN HARMONY WITH THE AREA IN WHICH IT IS LOCATED, AND IN GENERAL CONFORMITY WITH THE IREDELL COUNTY LAND USE AND DEVELOPMENTAL PLAN.
*308 A public hearing on the petition was held before the Board of Adjustment on 19 December 2013 and 23 January 2014. On 20 March 2014, the Board issued an order denying petitioners' request for a special use permit, finding that "[t]he Special Use [would not] be in harmony with the area in which it is to be located and [would not] be in general conformity with the plan of development of the county." The Board concluded that "there [was] an absence of material, competent, and substantial evidence supporting all necessary findings for the application in the affirmative...."
On 21 April 2014, petitioners filed a petition for writ of certiorari in Iredell County Superior Court seeking review of the decision of the Board of Adjustment. Specifically, petitioners argued that the Board of Adjustment erroneously adopted the conclusion that the evidence presented in opposition to their application for a special use permit was sufficient to rebut the prima facie showing of harmony.
Upon the issuance of a writ of certiorari, a complete record of the proceedings before the Board was prepared and submitted for review by the trial court. The appeal was heard during the 2 March 2015 Civil Session of Iredell County Superior Court before the Honorable Joseph N. Crosswhite, Judge presiding. On 12 March 2015, the court issued its order affirming the Board's decision denying petitioners a special use permit for a broadcast tower.
Petitioners appeal.
_________________________
On appeal, petitioners argue (I) that the Board's denial of the special use permit was erroneous as a matter of law and arbitrary and capricious. Furthermore, petitioners argue (II) that the Board violated petitioners' due process rights.
Standard of review
A local municipal board, a superior court, and this Court each have a particular standard of review. When it considers an application for a special use permit, a board of adjustment sits as the finder of fact. Cook v. Union Cnty. Zoning Bd. of Adjust., 185 N.C.App. 582, 585-86, 649 S.E.2d 458, 463 (2007). Upon the issuance of a writ of certiorari, a superior court reviews the decision of the board in the posture of an appellate court. Bailey & Assoc., Inc. v. Wilmington Bd. of Adjust., 202 N.C.App. 177, 189, 689 S.E.2d 576, 585 (2010). And, in that capacity, the court is tasked with the following:
*309 (1) Reviewing the record for errors in law,
(2) Insuring that procedures specified by law in both statute and ordinance are followed,
(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,
(4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and
(5) Insuring that decisions are not arbitrary and capricious.
Mann Media, Inc. v. Randolph Cnty. Planning Bd., 356 N.C. 1, 12-13, 565 S.E.2d 9, 16 (2002) (citation omitted); see also N.C. Gen.Stat. § 160A-393(k) (2015) ("Appeals in the nature of certiorari").
Where a party appeals the superior court's order to this Court, we review the order to "(1) determine whether the superior court exercised the appropriate scope of review and, if appropriate, (2) decide whether the court did so properly." Cook, 185 N.C.App. at 587, 649 S.E.2d at 464 (citation, quotation marks, and brackets omitted).
The standard of review [exercised by the superior court] depends on the nature of the error of which the petitioner complains. If the petitioner complains that the Board's decision was based on an error of law, the superior court should conduct a de novo review. If the petitioner complain[ed]
*667 that the decision was not supported by the evidence or was arbitrary and capricious, the superior court should apply the whole record test. The whole record test requires that the trial court examine all competent evidence to determine whether the decision was supported by substantial evidence.
Morris Commc'ns Corp. v. Bd. of Adjust. of Gastonia, 159 N.C.App. 598, 600, 583 S.E.2d 419, 421 (2003) (citation omitted).
I
Petitioners argue that the Board's denial of petitioners' application for a special use permit was error as a matter of law, and was also arbitrary and capricious. Petitioners contend that there was a legal presumption the proposed tower would be in harmony with the area and that *310 there was no evidence to support the Board's finding to the contrary. We disagree.
It is a settled principle, essential to the right of self-preservation in every organized community, that however absolute may be the owner's title to his property, he holds it under the implied condition 'that its use shall not work injury to the equal enjoyment and safety of others, who have an equal right to the enjoyment of their property, nor be injurious to the community.'
City of Durham v. Eno Cotton Mills, 141 N.C. 615, 639, 54 S.E. 453, 461 (1906). "For the purpose of promoting health, safety, morals, or the general welfare, a county may adopt zoning and development regulation ordinances." N.C. Gen.Stat. § 153A-340(a) (2015). "The regulations may ... provide that the board of adjustment ... may issue special use permits ... in accordance with the principles, conditions, safeguards, and procedures specified therein and may impose reasonable and appropriate conditions and safeguards upon these permits." Id. § 153A-340(c1). Zoning ordinances and special use permits also act as limitations to "forbid arbitrary and unduly discriminatory interference with property rights in the exercise of [a municipality's delegated authority]." Heaton v. City of Charlotte, 277 N.C. 506, 513, 178 S.E.2d 352, 356 (1971) (citation omitted). A special use permit allows uses which the zoning ordinance authorizes under stated conditions upon proof that those conditions, as detailed in the ordinance, exist. Mann Media, Inc., 356 N.C. at 10, 565 S.E.2d at 15.
The Iredell County Land Development Code, a zoning ordinance, allowed for the use of radio transmission towers on property zoned R-A (Residential-agricultural), with the approval of a special use permit by the Board of Adjustment. In granting a special use permit, the ordinance required that the Board make affirmative findings that the special use will not materially endanger the public health, will meet all required conditions and specifications, will not substantially injure the value of abutting property, and "will be in harmony with the area in which it is to be located and will be in general conformity with the plan of development of the county." Iredell County Land Development Code, section 12.2.4(D.).
The plan of development at issue here-the 2030 Horizon Plan-is a comprehensive land use plan. The Horizon Plan was adopted on 15 September 2009 (updated in November 2013). Thereafter, on 1 July 2011, the Iredell County Land Development Code was enacted to codify the Horizon Plan.
*311 A.
Petitioners contend that "the ordinance was sufficient evidence of harmony as a matter of law, the Board committed legal error by ignoring the legal presumption of harmony and finding that it 'did not hear sufficient evidence that the proposed tower would be in harmony with the area.' " However, we note the findings of the trial court on de novo review that the ordinance before the Board, as set forth in the Board's order, "w[ere] sufficient to overcome the legal presumption that listing the proposed broadcast tower as an allowed use in the zoning district established a prima facie case that the tower would be harmonious with the area."
In the petition for writ of certiorari to the Superior Court, petitioners argued that
the inclusion of the Use of radio/broadcast towers as a special use in the R-A District *668 [as established by the Iredell County Land Development Code] establishes a prima facie case that the said permitted use was in fact in harmony with the general zoning plan and in general conformity with the plan of development of Iredell County.
"The opponents of the [Special Use Permit] failed to present competent material and substantial evidence to rebut the Petitioner's evidence." "Contrary to law, the Board adopted a 'Conclusion of Law[ ]' that the evidence presented in opposition by the opponents was sufficient to rebut the prima facie showing of harmony." "It was an error of law for the Board of Adjustment to conclude that ... Petitioners 'failed to present substantial evidence showing how the proposed tower was in general conformity with the plan of development of the County...." "It was an error of law for the Board of Adjustment to find that the proposed tower would be prominently seen and therefore inconsistent with the surrounding parcels when its own Land Development Code provides that a radio/broadcast tower is an eligible Special Use in a R-A District...." And, "[i]t was an error of law for the Board of Adjustment to find and hold that the lighting of the tower would negatively impact nearby property owners when ... Respondent's own Land Development Code requires ... that radio towers have a Determination of No Hazard from the Federal Aviation Administration, which governs the lighting of the tower."
In its order, after having granted certiorari, the Superior Court firmly concluded there was no legal error committed by the Board on any of the bases raised by petitioner.
*312 The [Superior] Court ... finds upon de novo review that the evidence presented by Respondents and cited by the Board in its Order was sufficient to overcome the legal presumption that listing the proposed broadcast tower as an allowed use in the zoning district established a prima facie case that the tower would be harmonious with the area. Vulcan Materials Co. v. Guilford County Bd. of County Comm'rs., 115 N.C.App. 319, 444 S.E.2d 639 (1994).
The [Superior] Court further finds, upon de novo review, that the Board did not commit legal error when [it] found that it "did not hear sufficient evidence [from the Petitioner] that the proposed tower would be in harmony with the area," nor when it found that the tower "would be prominently seen and inconsistent with its surrounding parcels." The [Superior] Court further finds it was not legal error for the Board to find, based upon the evidence in the Record, that the lighting of the tower would not be in harmony with the area.
As stated, where petitioners challenged the Board's decision on the basis of an error of law, the Superior Court utilized de novo review. We hold this to be the appropriate standard. See Morris Commc'ns Corp., 159 N.C.App. at 600, 583 S.E.2d at 421 ("If the petitioner complains that the Board's decision was based on an error of law, the superior court should conduct a de novo review." (citation omitted)). We now consider whether the court applied the standard properly.
"[T]he inclusion of a use as a conditional use in a particular zoning district establishes a prima facie case that the permitted use is in harmony with the general zoning plan." Mann Media, Inc., 356 N.C. at 19, 565 S.E.2d at 20 (citation and quotation marks omitted). "If a prima facie case is established, a denial of the permit then should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record." Id. at 12, 565 S.E.2d at 16 (citation and quotation marks omitted).
In its order, the court cites Vulcan Materials Co., 115 N.C.App. 319, 444 S.E.2d 639, in support of its conclusion that "the evidence ... was sufficient to overcome the legal presumption that listing the proposed broadcast tower as an allowed use in the zoning district established a prima facie case that the tower would be harmonious with the area." In Vulcan Materials Co., this Court reasoned that "[i]f ... competent, material, and substantial evidence reveals that the use contemplated is not in *313 fact in 'harmony with the area in which it is to be located' the Board may so find." Id. at 324, 444 S.E.2d at 643 (citations omitted). *669 Reviewing the record before this Court, it appears that the Superior Court considered competent, material, and substantial evidence presented before the Board before concluding that such evidence was sufficient to overcome the legal presumption that the tower would be harmonious with the area, including the following: the 2030 Horizon Plan; photos of the subject property; a diagram showing the height of the radio broadcast tower to be comparable to that of the Empire State Building; testimony from nearby property owners on the tower's height, industrial appearance, and lighting, including testimony that an 1,130-foot industrial steel tower would change the rural landscape; that its overbearing height-eighty times taller than the height of the average building-would be an overbearing change to the skyline; that the strobe lights from the tower would be visible from the bedroom of some neighbors; and that construction of the tower would change the character of the small rural community. Therefore, we hold the superior court utilized the appropriate standard of review, de novo, in reviewing the Board's decision for an error of law and did so properly. Accordingly, petitioner's argument on this point is overruled.
B.
Next, petitioners contend that the tower would be in general conformity with the surrounding area and the county development plan where there was a legal presumption of conformity pursuant to the county zoning ordinance. Petitioners contend that the 2030 Horizon Plan, Iredell County's land use plan-a policy statement-was not relevant to the determination of general conformity. Thus, petitioners assert that the Board erred as a matter of law in utilizing the 2030 Horizon Plan as a measure of general conformity and, further, lacked competent, material, and substantial evidence to rebut the presumption of harmony. We disagree.
In its 12 March 2015 order, the Superior Court ruled that "the Board did not commit legal error when it found the 2030 Horizon Plan to be of critical relevance in addressing [the question of whether the proposed broadcast tower was 'in general conformity with the plan of development of the county.']" In reaching its conclusion, the court made the following findings.
Exercising de novo review, the [c]ourt is persuaded by the following [:] ... First, N.C. Gen.Stat. § 153A-341 provides that "Zoning regulations shall be made in accordance with *314 a comprehensive plan." No party contests that the 2030 Horizon Plan is the comprehensive land use plan adopted by Iredell County.
Second, while a special use permit application does not have the force of law, it is noted that the County signaled its expectations to ... [p]etitioner in the way its application articulates this standard ("Is the location and character of the special use developed according to the proposed plan in harmony with the area in which it is proposed to be located and in general conformity with the Iredell County Land Use and Development Plan?")
Third, special use permit Standards 1 and 3 specifically address the issue of conformity with the Land Development Plan ("(1) The Use is among those listed as an eligible Special Use in the District in which the subject property is located; (3) The Special use meets all required conditions and specifications"). Under Standard 1, the Land Development Code addresses the legal presumption of harmony and compatibility as a threshold inquiry, yet provides that being a listed use in the zoning district only makes the proposed use "eligible" to be considered for a special use permit. Consequently, Standard [3] ("That the location and character of the Special use ... will be in general conformity with the plan of development of the County") requires something more than indicating a second time whether a use is listed in the zoning ordinance as a permitted use in that district.
In addressing the issue, the Superior Court considered the relationship between zoning regulations and a comprehensive land use plan, as provided by our General Statutes, see N.C. Gen.Stat. § 153A-341 (2015), and properly determined that the 2030 Horizon Plan was Iredell County's comprehensive *670 land use plan, and that the special use permit application provides a standard for granting the permit which incorporates the plan of development for Iredell County. This Court has upheld the use of a comprehensive land use plan as an advisory instrument for a body tasked with interpreting a zoning ordinance in the process of issuing a special use permit. See Piney Mountain Neighborhood Ass'n v. Town of Chapel Hill, 63 N.C.App. 244, 251, 304 S.E.2d 251, 255 (1983) ("Taking due note of the advisory nature of the Comprehensive Plan, we find that the above material and competent evidence, taking contradictions into account, substantially supports the finding that the development *315 conforms with the general plans for physical development of the Town."). In the instant case, the comprehensive plan-2030 Horizon Plan-was determined to be relevant to the Board's determination of whether the proposed special use was in conformity with the area and with the plan. Consistent with the precedent of this Court, we hold the Superior Court appropriately applied the de novo standard of review to the issue of whether the land use plan was relevant to the determination of general conformity. In addition, we note we have already determined there was sufficient evidence to rebut the legal presumption of harmony. Accordingly, we overrule petitioners' argument.
Furthermore, in response to petitioners' contention that the Board's denial of a special use permit was arbitrary and capricious, we hold that that the Superior Court applied the appropriate whole record review standard. See Morris Commc'ns Corp., 159 N.C.App. at 600, 583 S.E.2d at 421 ("If the petitioner complain[ed] that the decision ... was arbitrary and capricious, the superior court should apply the whole record test. The whole record test requires that the trial court examine all competent evidence to determine whether the decision was supported by substantial evidence." (citation omitted)). And, upon review of the record, including what appeared to be competent, material, and substantial evidence of nonconformity, we hold that the Superior Court applied the whole record test appropriately. Accordingly, we affirm the order of the Superior Court.
II
Next, petitioners argue that the Board violated petitioners' due process rights by denying petitioners the opportunity to present testimonial evidence regarding the proposed tower and its harmoniousness with the surrounding area. We disagree.
Our Supreme Court has made clear that the task of a court reviewing a decision of a municipal body performing a quasi-judicial function, such as the Board of Adjustment's decision here, includes:
...
(3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents
....
Fehrenbacher v. City of Durham, 239 N.C.App. 141, 146, 768 S.E.2d 186, 191 (2015) (citation omitted).
*316 The record indicates that during the hearing before the Board, petitioners called Scott Robinson as a witness. Robinson was presented as an expert real estate appraiser: he had twenty years of experience in real estate appraisal; had earned MAI and RSA designations; had performed eighteen tower impact studies; and served as an expert witness in "numerous cases involving towers." Robinson provided the Board with a study setting forth his review of the market impact the presence of similar towers had on existing residential, commercial, and rural markets. Robinson's assessment considered the performance of the buyers and sellers based on sales data from residential and rural areas adjacent, in close proximity, and/or in view of towers of similar size and visual impact. Intervening respondents had raised an objection that Robinson was not qualified to testify to the tower's harmony with the surrounding area where his impact study examined only data assessing property value and use, not harmony. The Board accepted Robinson as an expert on the issue of land appraisal and heard his testimony that the tower would not substantially devalue adjoining property. However, Robinson was not *671 allowed to testify to his opinion on the issue of harmony with the surrounding area.
In its 12 March 2015 order affirming the Board's denial of petitioners' request for a special use permit, the superior court acknowledged petitioners' challenge to the Board's ruling to preclude Robinson from giving opinion testimony on the proposed tower's harmony with the surrounding area.
Exercising do novo review, the [Superior] Court finds that Mr. Robinson had not been properly qualified or accepted as an expert in a field that would qualify him to express an opinion at the hearing on the matter of the broadcast tower's harmony with the surrounding area, and the Board's ruling was not in error. The Court notes that Mr. Robinson's opinion on the question of harmony was fully expressed in his written report, which was not objected to by counsel for Intervening-Respondents and which therefore was accepted by the Board....
Further exercising de novo review, and based in part on Mr. Robinson's full expression of his opinion in his written report, the Court finds that Petitioners' rights of due process were not violated as alleged.
Where the record shows petitioners were given the right to offer testimony, cross-examine witnesses, and inspect documents, there *317 was no violation of due process rights. Accordingly, we overrule petitioner's argument.
In this case, we hold that the Superior Court exercised the appropriate standard of review in upholding the Board's denial of petitioners' special use permit and did so appropriately. We therefore affirm the judgment of the Superior Court.
AFFIRMED.
Judges DILLON and ZACHARY concur.