DILLON, Judge.
 

 *509
 
 The subject matter of this appeal is a proposed residential subdivision being developed by Farmbound Holdings, LLC (the "Developer"), which was approved by the City of Asheville's Planning and Zoning Commission (the " Commission"). Petitioners are individuals who reside near the proposed development. Petitioners (the "Neighbors") appeal from the trial court's order dismissing their action against the City of Asheville ("the City") and the Developer. For the following reasons, we reverse the order of the trial court and remand the matter to the trial court for remand to the Commission for further proceedings.
 

 I. Background
 

 In May of 2014, the Developer submitted an application to the City to develop a major residential subdivision known as the Brynn Subdivision. In its application, the Developer requested that the subdivision be approved
 
 with a modification
 
 which would allow for the city streets within the proposed subdivision to be narrower in width than otherwise required by City regulations.
 

 In October of 2014, the Commission convened a public meeting and heard a presentation by the City urban planner explaining the proposed project as well as the report of the City's Technical Review Committee recommending that the subdivision be approved with the modification. The Commission also allowed for public comment from concerned citizens who opposed approval, including the Neighbors. Ultimately, though, the Commission voted to approve the Brynn Subdivision preliminary plat, five to one (5-1),
 
 with
 
 the requested street-width modification.
 

 In December of 2014, the Neighbors filed a petition for
 
 certiorari
 
 in Buncombe County Superior Court, seeking review of the Commission's decision. Respondents each filed an answer and moved for dismissal.
 

 On 24 April 2015, after a hearing on the matter, the trial court entered its written order granting Respondents' motions to dismiss. The Neighbors timely filed written notice of appeal to our Court from the trial court's dismissal.
 

 *510
 
 II. Analysis
 

 In their sole argument on appeal, the Neighbors contend that the trial court erred
 
 *104
 
 in concluding that the City was
 
 not
 
 required to afford them all fair trial rights before approving the Developer's subdivision preliminary plat. Specifically, the Neighbors contend that the approval of the street-width modification required the Commission to exercise discretion and, therefore, rendered the Commission's approval process quasi-judicial in nature, and
 
 not
 
 ministerial/administrative in nature. We hold that the Commission's approval of the plat in this case was, in fact, quasi-judicial in nature and that, therefore, the Neighbors
 
 [1]
 
 were deprived of certain due process rights in the approval process. Accordingly, we reverse the order of the trial court for remand to the Commission for further proceedings consistent with this opinion.
 

 A. The Commission is Authorized to Approve Subdivision Applications.
 

 Our General Assembly has empowered municipalities to regulate the subdivisions within their territorial jurisdiction.
 
 River Birch Assocs. v. City of Raleigh,
 

 326 N.C. 100
 
 , 107,
 
 388 S.E.2d 538
 
 , 542 (1990). Specifically, N.C. Gen.Stat. § 160A-373 allows a municipality to exercise its power to approve subdivisions through either "(1) [t]he city council, (2) [t]he city council on recommendation of a designated body, or (3) [a] designated planning board, technical review committee, or other designated body or staff person." N.C. Gen.Stat. § 160A-373 (2014).
 

 With regard to a proposed subdivision requiring the extension of public and private streets, Asheville has elected the third option provided under our General Statutes. Specifically, Asheville's City Code of Ordinances delegates the power to approve a proposed subdivision which requires the extension of a public or private street to the Commission.
 
 [2]
 
 Asheville City Code of Ordinances § 7-5-8(a)(3)(d)(1) (2014).
 

 *511
 

 B. The Due Process Required in the Commission's Decision Process Depends upon Whether its Decision was Quasi-judicial or Administrative in Nature.
 

 Our Supreme Court has observed that the decision by a local government to approve or deny a particular land use is typically characterized as being one of four types-legislative, advisory, quasi-judicial, or administrative.
 
 See
 

 County of Lancaster v. Mecklenburg,
 

 334 N.C. 496
 
 , 507,
 
 434 S.E.2d 604
 
 , 612 (1993). As in
 
 County of Lancaster,
 
 the question in the present case is whether the Commission's approval of the subdivision plat is "properly characterized as a quasi-judicial decision or as an administrative [ ] decision."
 

 Id.
 

 The level of due process required to be afforded by the Commission in deciding a land use request depends upon whether its decision process is quasi-judicial
 
 or
 
 administrative in nature.
 
 See, e.g.,
 

 Sanco of Wilmington Serv. Corp. v. New Hanover County,
 

 166 N.C.App. 471
 
 , 475,
 
 601 S.E.2d 889
 
 , 892-93 (2004) (comparing administrative and quasi-judicial land use decisions). Specifically, our Supreme Court has recognized, "[d]ue process requirements mandate that certain
 
 quasi-judicial
 
 [land use] decisions comply with all fair trial standards when they are made."
 
 County of Lancaster,
 

 334 N.C. at 506
 
 ,
 
 434 S.E.2d at 611
 
 (emphasis added). The Supreme Court has described these "fair trial standards" as embracing "an evidentiary hearing with the right of the parties to offer evidence; cross-examine adverse witnesses; inspect documents; have sworn testimony; and have written findings of fact supported by competent, substantial, and material evidence."
 
 Id.
 
 at 507-08,
 
 434 S.E.2d at 612
 
 . In contrast, an
 
 administrative
 
 land use decision does not require this level of due process and may be made "without a hearing at all [.]"
 
 Id.
 
 at 508,
 
 434 S.E.2d at 612
 
 .
 

 *105
 
 Our Supreme Court has differentiated between quasi-judicial decisions and administrative decisions as follows: In making
 
 quasi-judicial
 
 decisions, the decision-maker must "exercise discretion of a judicial nature"; and in the land use context, "these quasi-judicial decisions involve the application of zoning policies to individual situations, such as variances, special and conditional use permits, and appeals of administrative determinations."
 
 Id.
 
 at 507,
 
 434 S.E.2d at 612
 
 . In sum, the Court has stated that such quasi-judicial decisions "involve two key elements: the finding of facts regarding the specific proposal and the exercise of some discretion in applying the standards of the ordinance."
 

 Id.
 

 Further, as explained by the Court, such quasi-judicial decisions may
 
 not
 
 be delegated to an individual administrator,
 
 see
 

 id.
 
 at 509,
 
 434 S.E.2d at 613
 
 , but rather must be made by the municipality's governing council, board
 
 *512
 
 of adjustment or-as in the case of Asheville-a designated planning board,
 
 see
 
 N.C. Gen.Stat. § 160A-373.
 

 By contrast,
 
 administrative
 
 decisions are "routine" and "nondiscretionary," and may be delegated to a single individual.
 
 County of Lancaster,
 

 334 N.C. at 507
 
 ,
 
 434 S.E.2d at 612
 
 . Moreover, while the decision-maker "may well engage in some fact finding [in making an administrative decision] ... this involves determining objective facts that do not involve an element of discretion."
 

 Id.
 

 (internal marks and citation omitted).
 

 This is not to say that
 
 every
 
 decision to allow a modification in a subdivision proposal is quasi-judicial in nature. That is, the decision to allow a modification may be administrative in nature if the decision process does not involve the exercise of discretion but rather involves the application of specific, neutral, and objective criteria as set out in the municipality's governing code.
 
 See
 

 id.
 
 at 510,
 
 434 S.E.2d at 614
 
 (explaining that a decision which requires the application of objective standards is administrative). However, where the decision requires the exercise of discretion in applying generally stated standards, the decision is of a quasi-judicial nature. As our General Assembly has provided,
 

 an ordinance
 
 shall be deemed to authorize a quasi-judicial decision
 
 if the city council or planning board is authorized to decide whether to approve or deny the plat based not only upon whether the application complies with the specific requirements set forth in the ordinance, but also on
 
 whether the application complies with one or more generally stated standards requiring a discretionary decision
 
 to be made by the city council or planning board.
 

 N.C. Gen.Stat. § 160A-377(c) (2014) (emphasis added).
 

 C. The Commission Viewed its Decision as Ministerial/Administrative in Nature and Not Quasi-judicial in Nature.
 

 Asheville's Code grants the Commission the authority to allow modifications to the minimum subdivision standards required under the Code. Asheville City Code of Ordinances § 7-5-8(c)(1) (2014). Specifically, the Code states that such modifications may be allowed in cases of "physical hardship," defining cases of physical hardship as
 

 those cases where because of the topography of the tract to be subdivided, the condition or nature of adjoining areas, or the existence of other unusual physical characteristics, strict compliance with the provisions of [the]
 

 *513
 
 chapter would cause unusual and unnecessary hardship on the subdivision of the property by [the] property owner or developer.
 

 Id.
 

 § 7-5-8(c)(2). In the event of a case of substantial hardship and the grant of a modification, the Code empowers the Commission to impose such conditions on the property owner or developer "as will ensure the purposes of the standards or requirements waived."
 

 Id.
 

 § 7-5-8(c)(3).
 

 Asheville's Code, however, also provides that the Commission's process in deciding whether to approve a preliminary plat "shall be ministerial in nature," without making any separate provision for those cases which involve approving a modification due to a physical hardship.
 

 Id.
 

 § 7-5-8(a)(3)(d)(1). Instead, the Code simply states that the Commission must schedule a public hearing to receive comments regarding a proposed project upon receipt of a major subdivision
 
 *106
 
 preliminary plat from the Technical Review Committee,
 
 [3]
 
 and that, in the event the preliminary plat as submitted is denied, the Commission must "set forth in writing the reasons for denying approval of the plat."
 

 Id.
 

 In the present case, the record of the proceedings before the Commission reveals that the Commission acted in a ministerial/administrative capacity, believing that it did not have the authority to reject the plat with the modification where City staff had already recommended approval. That is, it appears that the Commission was under the impression that modifications pursuant to § 7-5-8(c) of the City Code were administrative rather than quasi-judicial in nature, as the text of § 7-5-8(a)(3)(d)(1) of the City Code would seem to dictate. Specifically, the record of the Commission's hearing demonstrates as follows: Existing City standards required a minimum forty-five (45) foot right-of-way for certain new streets, but the proposed subdivision's streets had only a twenty-five (25) foot right-of-way. Nevertheless, the Commission was under the impression that the requested modification was part of the Technical Review Committee's initial review; that there had been compliance with the process in place for an applicant to request such a modification; that City staff had recommended approval of the modification or alternately had already approved the modification; and that the matter had, therefore, already been resolved prior to the Commission's approval of the plat, which was merely ministerial, as required by the Code.
 

 *514
 

 D. The Commission's Decision to Approve the Developer's Proposed Subdivision with the Modification was, in fact, Quasi-judicial in Nature.
 

 Notwithstanding the provisions of the Asheville Code suggesting otherwise, the decision regarding the Developer's proposed modification required a determination of whether the Developer would suffer "physical hardship" if the modification was not allowed.
 
 See
 
 id.
 

 § 7-5-8(c)(2). We hold that this determination required an exercise of discretion in the application of this generally stated standard, rendering the Commission's decision quasi-judicial in nature.
 
 See
 
 N.C. Gen.Stat. § 160A-377(c) (2014). Our conclusion is in spite of the language in Asheville's Code stating that review before the Commission "shall be ministerial."
 
 See
 
 Asheville City Code of Ordinances § 7-5-8(a)(3)(d)(1) (2014). Indeed, our General Assembly has provided that "an ordinance shall be deemed to authorize a quasi-judicial decision if the ... planning board is authorized to decide whether to approve or deny the plat based ... on whether the application complies with one or more generally stated standards." N.C. Gen.Stat. § 160A-377(c) (2014).
 

 Here, determining the presence of "physical hardship" as defined in § 7-5-8(c)(2) of Asheville's Code required the exercise of judgment and discretion in applying the relevant "generally stated standard[ ][.]"
 
 See
 
 id.
 

 That is, the decision did not require the mere application of specific, neutral, and objective criteria, which would render the decision administrative in nature. Therefore, we hold that the Commission's approval of the Developer's plat with the street-width modification was a quasi-judicial decision. In approving the plat, the Commission was required to determine whether the Developer would suffer "physical hardship" without the modification, a decision which required the exercise of judgment and discretion in applying this general standard.
 
 [4]
 

 *107
 

 *515
 

 E. The Trial Court Erred in Dismissing the Petition for Certiorari, and Remand to the Commission is Necessary.
 

 Having found that the Commission's decision to approve the proposed subdivision was quasi-judicial in nature, we hold that the trial court erred in dismissing the Neighbor's petition for
 
 certiorari,
 
 and remand the matter to the trial court for further remand to the Commission so that a hearing with "fair trial standards" can be had.
 

 While review of quasi-judicial decisions by local land use authorities is first to superior court and in the nature of
 
 certiorari, see
 

 id.
 

 § 153A-336(a);
 

 id.
 

 § 160A-377(a) ;
 

 id.
 

 § 153A-349(a);
 

 id.
 

 §§ 160A-393(a), (b)(3), our Court reviews the decisions of trial courts in such cases to determine whether (1) the trial court's review was within the appropriate scope of review and (2) whether the review was correct,
 
 see
 

 Fehrenbacher v. City of Durham,
 
 --- N.C.App. ----, ----,
 
 768 S.E.2d 186
 
 , 191 (2015). Moreover, the nature of the decision by the local authority, not the label assigned to it, controls.
 
 Guilford Fin. Servs., LLC v. City of Brevard,
 

 150 N.C.App. 1
 
 , 6,
 
 563 S.E.2d 27
 
 , 31 (2002),
 
 rev'd on other grounds,
 

 356 N.C. 655
 
 ,
 
 576 S.E.2d 325
 
 (2003) (per curiam).
 

 Our Supreme Court has held that the appropriate scope of review on a petition for
 
 certiorari
 
 from a decision by a local governmental authority regarding otherwise non-compliant land use includes the following issues where the local authority is acting in a quasi-judicial capacity:
 

 (1) Reviewing the record for errors in law,
 

 (2) Insuring that procedures specified by law in both statute and ordinance are followed,
 

 (3) Insuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,
 

 (4) Insuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and
 

 (5) Insuring that decisions are not arbitrary and capricious.
 

 Coastal Ready-Mix Concrete Co., Inc. v. Bd. of Comm'rs of Town of Nags Head,
 

 299 N.C. 620
 
 , 626,
 
 265 S.E.2d 379
 
 , 383 (1980).
 

 Under the whole record test, which our Court has held is one of the standards of review applicable to these decisions, if the petitioner is alleging that the decision by the local authority was arbitrary and
 
 *516
 
 capricious, its findings of fact are binding on appeal if they are supported by substantial, competent evidence, provided such evidence was presented to the local authority before the decision was made.
 
 Blue Ridge Co., L.L.C. v. Town of Pineville,
 

 188 N.C.App. 466
 
 , 469,
 
 655 S.E.2d 843
 
 , 846 (2008). However, where the petitioner is alleging that the decision was based on legal error,
 
 de novo
 
 review, the other relevant standard, is applicable.
 
 Id.
 
 at 469,
 
 655 S.E.2d at 845-46
 
 . Our Court has held that "[t]he superior court may apply both standards of review if required, but the standards should be applied separately to discrete issues."
 
 Id.
 
 at 469-70,
 
 655 S.E.2d at 846
 
 .
 

 In the present case, the Neighbors alleged in their petition for
 
 certiorari,
 
 which they labeled in the alternative as a complaint seeking a declaratory judgment and injunctive relief, that the Commission failed to comply with the due process requirements for quasi-judicial proceedings, alleging additionally that in doing so the Commission acted arbitrarily and capriciously. Therefore, under
 
 Blue Ridge Co.,
 
 the allegations in the Neighbors' petition required the trial court to review the Commission's decision under both the
 
 de novo
 
 and whole record standards.
 
 Id.
 
 at 469-70,
 
 655 S.E.2d at 845-46
 
 . The trial court, however, did neither, apparently simply agreeing with the Respondents' position in their answers and motions to dismiss, ordering that the Neighbors' petition be dismissed without addressing any of the relevant issues set out by our Supreme Court in
 
 Coastal Ready-Mix Concrete,
 
 or
 
 *108
 
 making any findings or conclusions indicating its rationale for so ruling.
 

 In any event, we hold that the trial court on remand shall remand the case to the Commission to conduct further proceedings which provide the Neighbors with the level of due process required for quasi-judicial proceedings before that Commission.
 
 [5]
 

 See
 

 Humble Oil & Ref. Co. v. Bd. of Aldermen of Town of Chapel Hill,
 

 284 N.C. 458
 
 , 470,
 
 202 S.E.2d 129
 
 , 137 (1974).
 

 III. Conclusion
 

 For the reasons stated herein, we reverse the order of the trial court and remand the matter for further proceedings.
 

 REVERSED AND REMANDED.
 

 Judges BRYANT and ZACHARY concur.
 

 [1]
 

 Neither party argues the Neighbors' standing in this matter.
 

 [2]
 

 A proposed subdivision which involves the extension of public or private streets is deemed a "major" subdivision under Asheville's Code. Asheville City Code of Ordinances § 7-5-8(a)(1) (2014). "Minor" subdivisions are dealt with separately in the Code and need only be approved by City staff,
 
 see
 
 id.
 

 § 7-5-8(b)(4), as they "do not require the extension of public streets or private streets built to City of Asheville standards,"
 
 see
 
 id.
 

 § 7-5-8(b)(1).
 

 [3]
 

 The Technical Review Committee is tasked with the initial stage of review of new major subdivision applications and their compliance with applicable regulations. Asheville City Code of Ordinances § 7-5-8(a)(3)(d) (2014).
 

 [4]
 

 Generally speaking, the weighing by a local government board of various burdens of a proposed use of land not strictly complying with local regulations to determine whether certain of the associated burdens constitute an undue hardship on a particular party requires application of a general standard-undue hardship-to a set of individualized circumstances, and the exercise of judgment and discretion.
 
 See
 

 Harrison v. City of Batesville,
 

 73 So.3d 1145
 
 , 1152-56 (2011) (Mississippi Supreme Court reviewing quasi-judicial application of such a standard);
 
 Matthew v. Smith,
 

 707 S.W.2d 411
 
 , 414-18 (1986) (Missouri Supreme Court: same);
 
 Oklahoma City v. Harris,
 

 191 Okla. 125
 
 ,
 
 126 P.2d 988
 
 , 991-92 (1941) (Oklahoma Supreme Court: same);
 
 Brandon v. Bd. of Comm'rs of Town of Montclair,
 

 124 N.J.L. 135
 
 , 139-41,
 
 11 A.2d 304
 
 (1940) (New Jersey Supreme Court: same).
 

 [5]
 

 Our holding is not to be construed to deem
 
 all
 
 allowances of modifications, variances, or special uses, whether under Asheville's Code or any other local land use regulation, as quasi-judicial decisions. Instead, our holding here is confined to the modification authorized by § 7-5-8(c) of the Asheville City Code, where a modification is required for approval of an otherwise non-compliant preliminary plat. For example, although § 7-7-8(c)(6) of the City Code, applicable to conditional use zoning, authorizes the City planning and development director to allow "minor modifications" to approved conditional use zoning ordinances, such modifications are prescribed by specific, neutral, and objective criteria, such as the limitation of a deviation not in excess of "up to ten percent or 24 inches ... from the approved setback," or a reduction of no more than "25 percent in the number of parking spaces required[.]"
 
 See
 
 Asheville City Code of Ordinances § 7-7-8(c)(6) (2014). Whereas § 7-5-8(c) of the City Code authorizes a modification requiring application of the physical hardship standard without any other guiding standards, minor modifications under § 7-7-8(c)(6) are guided by clear standards.
 
 See
 
 id.
 

 Therefore, our review of a minor modification under § 7-7-8(c)(6), unlike a more general modification under § 7-5-8(c), would, like the legislative action empowering the planning and development director to authorize it, be deferential, presuming its validity.
 
 See
 

 County of Lancaster v. Mecklenburg,
 

 334 N.C. 496
 
 , 510 n. 7,
 
 434 S.E.2d 604
 
 , 614 n. 7 (1993).