IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA17-461

Filed: 19 December 2017

Lee County, No. 16 CVS 329

LITTLE RIVER, LLC, Petitioner,

v.

LEE COUNTY, NORTH CAROLINA, Respondent,

and

CAROLINA TRACE ASSOCIATION, INC.; SOUTH LANDING PROPERTY OWNERS ASSOCIATION, INC.; VILLAGE AT THE TRACE PROPERTY OWNERS ASSOCIATION; SEDGEMOOR PROPERTY OWNERS ASSOCIATION; ESCALANTE CAROLINA TRACE, LLC; SANDRA WARD; TERRY WARD; LAURA RIDDLE; BOBBY RIDDLE, JR.; DANIEL STANLEY; KAY COLES; FRED BERMAN; C. DAVID TURNER; JOHN BECK; LYONA BECK; GERALD MERRITT; CHERYL MERRITT; KERMIT KEETER; LOUANE KEETER; ALFRED RUSHATZ; SHARWYNNE BLATTERMAN; BARRY MARKOWITZ; MIRIAM MARKOWITZ; TERRI DUSSAULT; and HOMER TODD SPOFFORD, Neighbor-Respondents.

Appeal by petitioner from order entered 12 December 2016 by Judge John W. Smith in Lee County Superior Court. Heard in the Court of Appeals 1 November 2017.

Smith Moore Leatherwood LLP, by Karen M. Kemerait and M. Gray Styers, Jr., for petitioner-appellant.

Yarborough, Winters & Neville, P.A., by Garris Neil Yarborough, and Lee County Attorney Whitney Parrish, for respondent-appellee.

Womble Carlyle Sandridge & Rice, LLP, by Michael C. Thelen, for intervenor-respondent-appellees.

TYSON, Judge.

Little River, LLC ("Petitioner") appeals from an order affirming the decision of the Lee County Board of Adjustment (the "Board") to deny Petitioner's application for a special use permit. We affirm in part, reverse in part, and remand.

I. Background

On 9 September 2015, Petitioner submitted its second application to the Lee County Planning and Community Development Department (the "Department") for a Special Use Permit ("SUP") to establish an aggregate rock quarry to be located at 5500 NC Highway 87, Sanford, North Carolina, on a proposed 48 acre portion of a 377 acre parcel. The property is predominately zoned Residential Agricultural ("RA"), with two Rural Residential ("RR") zoned parcels adjoining NC Highway 87. Quarries are a permitted use of right in the zoning districts under Article 4 of the Sanford-Broadway-Lee County Unified Development Ordinance ("UDO"), subject to a SUP.

The Department forwarded the application to the Board, which held public, quasi-judicial hearings during five nights over the course of a six-month period. All participants, including the Board, were represented by counsel. Special counsel for the Board, attorneys for Petitioner, and the attorney for Intervenor-Respondent Carolina Trace Association, Inc. ("CTA") all agreed upon procedures to ensure both

fairness and expediency throughout the hearing. Petitioner and CTA presented evidence at the hearing.

At the close of all evidence, the Board denied Petitioner's application based upon fifteen findings of fact, leading to the following four conclusions of law:

> 1. The applicant failed to demonstrate that the use will not materially endanger the public health or safety if located where proposed and developed according to the plan as submitted and approved.
>
> 2. The applicant failed to demonstrate that the use met all required conditions and specifications.
>
> 3. The applicant failed to demonstrate that the use would not substantially injure the value of adjoining or abutting property or that the use is a public necessity.
>
> 4. The applicant failed to demonstrate that the location and character of the use, if developed according to the plan submitted and approved, would be in harmony with the area which it is located and in general conformity with all adopted land use plans.

Petitioner sought certiorari review of the Board's decision in the superior court. CTA and other interested parties (collectively "Respondent-Intervenors") moved to intervene. Petitioner consented to their intervention. After the hearing, in an order dated 12 December 2016, the superior court affirmed the Board's denial of the SUP, and concluded that for the Petitioner's purported errors of law:

> 10. Applying *de novo* review, the Court finds and concludes that the Lee County Board of Adjustments did not commit legal error, in that:

a. It is not necessary that Neighbor-Respondent Carolina Trace Association, Inc. demonstrates legal standing to participate in the quasi-judicial proceedings to appear before the Lee County Board of Adjustments . . . .

. . .

g. The Lee County Board of Adjustments has the discretion to determine Petitioner did not establish a *prima facie* case . . . . and . . . has the discretion to require assurances regarding health, safety, and environmental risks . . . .

The superior court then applied a "whole record review," and found and concluded: (1) there was "competent, material, and substantial evidence" to support all the findings by the Board; (2) "each and every finding of fact . . . support the Board's conclusions of law; "[n]one of the findings of fact . . . is either arbitrary or capricious"; and, (3) "[a]ll of the Board's conclusions of law support the Board's decision to deny Petitioner Little River, LLC's application for a special use permit[.]" Petitioner appeals.

## II. Jurisdiction

Jurisdiction lies in this Court from an appeal of right from a final judgment of the superior court. N.C. Gen. Stat. § 7A-27(b) (2015).

## III. Issues

Petitioner argues: (1) the opponents of the quarry did not have standing in the quasi-judicial proceeding; (2) no competent, substantial, and material evidence supports the Board's denial of its SUP, presuming Petitioner established a *prima facie* case; (3) the Board's denial of the SUP was arbitrary and capricious; and, (4) its

due process rights were violated. Respondent objects to Petitioner's issues on appeal, and asserts the only issue before this Court is whether the superior court properly exercised its scope of review of the Board's decision.

IV. Standard of Review

"A legislative body such as the Board, when granting or denying a [special] use permit, sits as a quasi-judicial body." *Sun Suites Holdings, LLC v. Bd. of Alderman of Town of Garner*, 139 N.C. App. 269, 271, 533 S.E.2d 525, 527, *disc. review denied*, 353 N.C. 280, 546 S.E.2d 397 (2000).

"The Board's decisions 'shall be subject to review of the superior court in the nature of certiorari.'" *Dellinger v. Lincoln Cty.*, __ N.C. App. __, __, 789 S.E.2d 21, 26, *disc. review denied*, 369 N.C. 190, 794 S.E.2d 324 (2016) (quoting N.C. Gen. Stat. § 160A-381(c) (2015)). "In reviewing the Commissioners' decision, the superior court sits as an appellate court, and not as a trier of facts." *Innovative 55, LLC v. Robeson Cty.*, __ N.C. App. __, __, 801 S.E.2d 671, 675 (2017) (citation and quotation marks omitted). Under the scope of its review, a superior court must only determine whether:

> 1) the [b]oard committed any errors in law; 2) the [b]oard followed lawful procedure; 3) the petitioner was afforded appropriate due process; 4) the [b]oard's decision was supported by competent evidence in the whole record; and 5) [whether] the [b]oard's decision was arbitrary and capricious.

*Overton v. Camden Cty.*, 155 N.C. App. 391, 393, 574 S.E.2d 157, 159 (2002) (alterations in original) (quoting *Capital Outdoor, Inc. v. Guilford Cty. Bd. of Adjustment*, 152 N.C. App. 474, 475, 567 S.E.2d 440, 441 (2002) (citation omitted)).

The standard of review of the superior court depends upon the purported error. *Morris Commc'ns. Corp. v. Bd. of Adjustment of Gastonia*, 159 N.C. App. 598, 600, 583 S.E.2d 419, 421 (2003). Petitioner raises several issues, which require both *de novo* and whole record review. "When a party alleges the Board of Commissioners' decision was based upon an error of law, both the superior court, sitting as an appellate court, and this Court reviews the matter *de novo*, considering the matter anew." *Dellinger*, ___ N.C. App. at ___, 789 S.E.2d at 26 (citation omitted). "When the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the whole record test." *ACT-UP Triangle v. Comm'n for Health Servs. of the State of N.C.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citation and quotation marks omitted). "The whole record test requires that the [superior] court examine all competent evidence to determine whether the decision was supported by substantial evidence." *Morris Commc'ns.*, 159 N.C. App. at 600, 583 S.E.2d at 421.

"Where a party appeals the superior court's order to this Court, we review the order to (1) determine whether the superior court exercised the appropriate scope of review and, if appropriate, (2) decide whether the court did so properly. *Davidson Cty.*

*Broad. Co. v. Iredell Cty.*, ___ N.C. App. ___, ___, 790 S.E.2d 663, 666 (2016) (citations and quotation marks omitted), *disc. review denied*, ___ N.C. ___, 797 S.E.2d 13 (2017).

## V. Analysis

### A. Standing

Petitioner argues Respondent-Intervenors did not have standing to participate in the quasi-judicial Board of Adjustment meeting. Petitioner asserts our decision in *Cherry v. Wiesner*, __ N.C. App. __, 781 S.E.2d 871 (2016), controls this issue in its favor. We disagree.

"Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction, and is a question of law which this Court reviews de novo." *Smith v. Forsyth Cty. Bd. of Adjustment*, 186 N.C. App. 651, 653, 652 S.E.2d 355, 357 (2007) (citations, quotation marks, and brackets omitted). For zoning and land use decisions being made before a Board of Adjustment, "[t]he ordinance may provide that the board of adjustment may hear and decide special and conditional use permits in accordance with standards and procedures specified in the ordinance." N.C. Gen. Stat. § 160A-388(c) (2015).

In this case, section 3.1.5.3.3 of the UDO provides: "[a]ny person or persons may appear at a public hearing and submit evidence, either individually or as a representative." Petitioner applied for and appeared before the Board seeking a SUP to open and operate a quarry. As a quasi-judicial public hearing under the UDO, any

member of the public was able to appear and present evidence, as Respondent-Intervenors did.

Unlike in *Cherry*, where the neighbor appealed the Board's decision allowing the applicants' design plans, Petitioner appealed the Board's decision denying its SUP. *See Cherry*, __N.C. App. at __, 781 S.E.2d at 874. Only petitioners with standing may appeal a quasi-judicial decision to the superior court in the nature of certiorari. N.C. Gen. Stat. § 160A-393(d). Any person with "an ownership interest in the property that is the subject of the decision being appealed" has such standing. *Id.*

Petitioner co-operatively worked to allow Respondent's counsel to help determine the procedures before the Board and expressly consented to Respondent-Intervenors' motion to intervene before the superior court. Any purported challenge to the standing of Respondent-Intervenors is without merit. That portion of the superior court's order is affirmed.

### B. Little River's *Prima Facie* Showing

Petitioner argues the Board failed to follow the appropriate procedure and did not first determine whether or not the Petitioner's evidence and testimony had made a *prima facie* showing of entitlement to a SUP. This threshold determination should be based upon the Petitioner's competent, material, and substantial evidence, or lack thereof. We hold Petitioner met its burden of producing a *prima facie* showing.

Petitioner is not seeking a rezoning, only a SUP to conduct a use expressly permitted in these zoning districts. "A conditional use permit is one issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist." *Woodhouse v. Bd. of Comm'rs of the Town of Nags Head*, 299 N.C. 211, 215, 261 S.E.2d 882, 886 (1980) (citation and quotation marks omitted). "When an applicant for a conditional use permit produces competent, material, and substantial evidence of compliance with all ordinance requirements, the applicant has made a *prima facie* showing of entitlement to a permit." *Howard v. City of Kinston*, 148 N.C. App. 238, 246, 558 S.E.2d 221, 227 (2002) (citation and quotation marks omitted). A petitioner's burden to establish a *prima facie* showing is one "of *production,* and not a burden of proof." *Innovative 55,* __ N.C. App. at __, 801 S.E.2d at 676. Otherwise, "[t]o hold that an applicant must first anticipate and then prove or disprove each and every general consideration would impose an intolerable, if not impossible, burden on an applicant for a conditional use permit. An applicant need not negate every possible objection to the proposed use." *Woodhouse,* 299 N.C. at 219, 261 S.E.2d at 887-88 (citation and quotation marks omitted).

The property in question is zoned RR and RA. Article 4 of the UDO specifically allows quarries on property zoned RR and RA as a permitted use, subject to a special use permit and additional development regulations.

According to section 3.5.3 of the UDO, a SUP shall be granted if the applicant

proves:

> [1] The use will not materially endanger the public health or safety if located where proposed and developed according to the plan as submitted and approved,
>
> [2] The use meets all required conditions and specifications,
>
> [3] The use will not substantially injure the value of adjoining or abutting property, or that the use is a public necessity, and
>
> [4] The location and character of the use, if developed according to the plan submitted and approved, will be in harmony with the area in which it is located and in general conformity with all adopted land use plans.

### 1. Public Health and Safety

Petitioner presented competent, substantial, and material evidence to show

the proposed quarry is located in a zoning district where it is permitted and will not

"materially endanger the public health or safety." Petitioner's evidence tends to show

the proposed quarry will be subject to extensive regulation from state and federal

agencies, including several subsets of the North Carolina Department of

Environmental Quality ("NC DEQ"), the United States Mine Safety Health

Administration, and the Bureau of Alcohol, Tobacco, Firearms and Explosives. Any

blasting that occurs is strictly regulated and will be closely monitored and regulated

to ensure no adverse effects due to ground vibrations will occur. Further, Petitioner's

application included conditions restricting the peak particle velocity to below

regulatory standards and restricting blasting to between 9:00 a.m. and 5:00 p.m. In North Carolina, blasting is an ultra-hazardous activity and Petitioner will be held strictly liable for any adverse consequences. *Kinsey v. Spann*, 139 N.C. App. 370, 374, 533 S.E.2d 487, 491 (2000).

Petitioner presented competent evidence of minimal off-site noise, producing no impact on public health and safety due to sound. The proposed quarry will be subject to stricter air quality standards than other existing quarries in the county, due to the applicability of the Clean Air Act. Further, Petitioner presented competent evidence of dust suppression at the stages of processing, storing, and loading the aggregate.

Petitioner's evidence also tends to show the quarry's use of water will be heavily regulated by state agencies, ensuring no adverse impact to health or safety regarding ground or surface water. Petitioner's evidence also tends to show the majority of water usage will be maintained through rainwater, with some withdrawal of ground water. Water used in the quarry process will not contain any chemicals and will be recycled and stored on site. Any withdrawal from or discharge to surface water creeks or rivers will be subject to a National Pollutant Discharge Elimination System permit through NC DEQ.

Regarding increased traffic, Petitioner presented evidence of a 0.1 second delay due to truck ingress and egress from the proposed quarry. The additional trucks on

the road would not materially impact any of the surrounding intersections. The North Carolina Department of Transportation did not express any concerns regarding the sightline from the proposed entrance of the quarry site, and did not require a signal light to be installed at the proposed entrance. Petitioner agreed to restripe the road and create a dedicated left turn lane into the quarry.

The Board incorrectly found Petitioner had "failed to prove that the proposed use would not create significant, negative" impacts to air quality and surface and ground water, language the superior court erroneously used in its findings of fact. Petitioner's burden is a burden of production, not proof. *See Innovative 55,* __ N.C. App. at __, 801 S.E.2d at 676. Petitioner presented competent, material, and substantial evidence the proposed quarry will be established on a parcel already zoned and permitted for this use and would not have a material, adverse impact on public health or safety.

### 2. Required Conditions and Specifications of Permitted Use

Lee County's Development Regulations for quarries are found in Article 5 of the UDO. Quarries are a permitted use and are subject to Development Regulations laid out in section 5.23.2, entitled "Standards."

> 5.23.2.1 Minimum lot area is five (5) acres.
>
> 5.23.2.2 Such uses shall have direct access to a paved Public Street with an all-weather surface.

5.23.2.3 Minimum front, side and rear yards shall be fifty (50) feet, which shall be used for landscaping and screening.

5.23.2.4 The excavated area shall be surrounded with a six (6) foot high security fence.

5.23.2.5 Only one (1) ground sign per entrance to the storage yard is permitted. Such sign shall not exceed fifty (50) square feet in area. If lighted, such sign may include indirect lighting or non-flashing illumination. Such sign shall be located on the same lot or parcel as the mining or quarrying operation.

The property where the proposed quarry is located contains 377 acres, with 48 acres of the property being proposed for mining, and 90 acres being disturbed. Petitioner's evidence tends to show that 75% of the property will be undisturbed vegetative buffer for screening from the adjoining properties. Petitioner presented competent evidence of a paved driveway to access the quarry from NC Highway 87 and leading to a parking lot near the sales center. Petitioner also presented evidence asserting a proposed fifty-foot vegetative barrier bordering the driveway, the narrowest point of vegetative barrier to be established and maintained between the quarry and surrounding areas. Petitioner presented a preliminary site plan and other evidence indicating the installation of a six-foot high security fence around the mining area and only one sign located at the entrance, all of which would conform to the standards set forth in the UDO.

The findings of the Board show no adjudication of and ignores this evidence presented by Petitioner. The requirements the Board alleges Petitioner failed to

include in its application, including detail on lighting and grading, are not stated as requirements for a SUP application, but are requirements for issuance of a building permit, an entirely separate process. Petitioner presented substantial, material, and competent evidence of all required specifications and conditions to establish a *prima facie* case for the issuance of the SUP. The Board erroneously conflagrated the burden of producing a *prima facie* showing to support the SUP application with required development and building standards and conditions.

### 3. Value of Adjoining and Abutting Property

Petitioner presented expert testimony by a certified real estate appraiser tending to show no impact on the adjoining or abutting property values. The expert ran a paired sales analysis for 319 homes near surrounding quarries, including properties not immediately adjoining or abutting those other quarries. Based upon this analysis, the expert appraiser opined there would be no negative impact on property values.

### 4. Harmony of Quarry with Surrounding Area

"The inclusion of the particular use in the ordinance as one which is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in the district." *Woodhouse*, 299 N.C. at 216, 261 S.E.2d at 886 (citation omitted). As quarries are a permitted use in this zoning district under the UDO, the proposed quarry has previously been

legislatively determined to be in harmony with the surrounding uses and zoning districts.

Petitioner also presented expert testimony tending to show the use will be in harmony with the surrounding area. The majority of the acreage in the property, over 75%, will remain undisturbed and used as a buffer to protect surrounding properties from any view of the quarry. The one-mile radius around the proposed location is thinly populated. The only two adjoining or abutting property owners to speak at the hearing both were in favor of issuing the SUP for the quarry, and testified to it being in harmony with their adjoining properties and surrounding areas.

Petitioners provided substantial, material, and competent evidence of all four requirements listed in section 3.5.3 of the UDO. Petitioner met its *prima facie* showing of entitlement to its SUP for the proposed quarry operations. *See Howard*, 148 N.C. App. at 246, 558 S.E.2d at 227. Respondent's arguments to the contrary are overruled.

### C. Board's Denial of Little River's SUP

Petitioner asserts there is no competent, material, and substantial evidence to counter or rebut their *prima facie* case, or to support the Board's denial of their SUP application, and the Board's decision was arbitrary and capricious. We agree.

"Once an applicant makes [a *prima facie*] showing, the burden of establishing that the approval of a conditional use permit would endanger the public health, safety, and welfare falls upon those who oppose the issuance of the permit." *Howard*, 148 N.C. App. at 246, 558 S.E.2d at 227.

If after presentation of rebuttal evidence a Board denies a SUP application, the denial must be "based upon findings which are supported by competent, material, and substantial evidence appearing in the record." *Id.* "When a party alleges that a decision of the superior court is arbitrary and capricious or unsupported by substantial evidence, this Court reviews the whole record." *Cumulus Broad., LLC v. Hoke County Bd. of Comm'rs*, 180 N.C. App. 424, 428, 638 S.E.2d 12, 16 (2006) (citation omitted). Here, we examine the whole record to determine the sufficiency of the evidence to support the Board's denial of Petitioner's SUP.

Many of the Board's findings of fact to support its conclusions are based solely upon opponents' evidence and wholly ignore the evidence presented to make a *prima facie* showing by Petitioner. As a reviewing court applying the whole record test, the superior court "may not consider the evidence which in and of itself justifies the Board's result, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn." *Thompson v. Wake Cty. Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

At the quasi-judicial hearing, CTA presented both expert and lay testimony concerning the proposed quarry. None of the CTA residents adjoin or abut Petitioner's property. All of the opponents to the quarry opined it would cause harm to public health due to blasting and dust, to the environment, to property values, and to public safety due to traffic. "Speculative opinions that merely assert generalized fears about the effects of granting a conditional use permit for development are not considered substantial evidence to support the findings [to deny the permit]." *Humane Society of Moore Cty. v. Town of S. Pines*, 161 N.C. App. 625, 631, 589 S.E.2d 162, 167 (2003). Without specific, competent evidence to support these "generalized fears," this evidence does not rebut Petitioner's *prima facie* showing. *See id.*

Respondent-Intervenors' experts agreed that the proposed quarry use would be heavily regulated, and, as such, would not endanger the public health and safety due to blasting, sound, air quality, water quality, or traffic. The only rebuttal evidence Respondent-Intervenors produced, beyond "generalized fears" and speculation, was that Petitioner had not yet received the required approvals and permits from other regulatory agencies.

The UDO does not mandate all required approvals to be granted and permits issued prior to the approval of the SUP application. If needed, the Board can condition issuance of the SUP upon Petitioner securing these approvals and permits.

The lack of all required approvals and permits at the time of the hearings does not rebut Petitioner's *prima facie* showing for the SUP.

The expert witness evidence to rebut Petitioner's showing of compliance with the UDO's condition 2 mistakes the process for site approval in Lee County. Petitioner presented evidence of compliance with all requirements for a SUP, and any information the Board contends was missing was not required at this application for approval. These missing elements may affect the site plan and building approvals, and conditions imposed, but are insufficient to rebut the substantial, material evidence and to overcome Petitioner's *prima facie* showing or to support the Board's denial of the SUP.

The UDO clearly states the impact on property values only applies to "adjoining or abutting property." No residents of CTA or other Respondent-Intervenors who testified or intervened own property that adjoins or abuts the Petitioner's property. Their expert's assertion that several properties located in CTA may be negatively impacted by the quarry does not, *ipso facto*, overcome Petitioner's showing in the consideration of conclusion 3. Additionally, it was improper for the superior court to weigh the evidence and to assert Respondent-Intervenors' expert was "substantially more compelling." The superior court erred by re-weighing the evidence, as compared to reviewing the whole record as an appellate court. The

superior court's review is limited to competent evidence in the whole record. *See Thompson*, 292 N.C. at 410, 233 S.E.2d at 541.

As noted, the County has already made a legislative decision to permit the operation of quarries in RA and RR zoned districts with approval of a special use permit. Respondent-Intervenors' rebuttal evidence regarding the lack of harmony with the surrounding uses consisted of "generalized fears" and speculation of lay witnesses. This testimony is insufficient to rebut Petitioner's *prima facie* showing and the prior legislatively determined harmony of this use within these zoning districts and with the surrounding area. *See Woodhouse*, 299 N.C. at 216, 261 S.E.2d at 886; *see also Am. Towers, Inc. v. Town of Morrisville*, 222 N.C. App. 638, 643, 731 S.E.2d 698, 702-03 (2012), *disc. review denied*, 366 N.C. 603, 743 S.E.2d 189 (2013).

The Board's findings are unsupported by competent, material, and substantial evidence, and its conclusions thereon are, as a matter of law, erroneous. Respondent-Intervenors did not present substantial, material, and competent evidence to rebut Petitioner's *prima facie* showing of entitlement to a SUP. The superior court erred by not properly reviewing the evidence of the whole record, and the conclusions thereon *de novo*, and by affirming the Board's decision.

## D. Little River's Due Process Rights

Petitioner argues it was denied due process in the quasi-judicial hearing before the Board of Adjustment. We disagree.

A Board "conducting a quasi-judicial hearing, can dispense with no essential element of a fair trial[.]" *Humble Oil & Refining Co. v. Bd. of Aldermen of the Town of Chapel Hill*, 284 N.C. 458, 470, 202 S.E.2d 129, 137 (1974). The Board "must insure that an applicant is afforded a right to cross-examine witnesses, is given a right to present evidence, is provided a right to inspect documentary evidence presented against him and is afforded all the procedural steps set out in the pertinent ordinance or statute." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of the Town of Nags Head*, 299 N.C. 620, 626, 265 S.E.2d 379, 383 (1980).

Here, every party was represented by counsel who all mutually agreed upon the procedures to be followed at each of the five quasi-judicial hearings. Having already addressed Petitioner's argument concerning Respondent-Intervenors' standing, we find no violation of Petitioner's due process rights. Petitioner's arguments are overruled.

## VI. Conclusion

Petitioner has failed to show any error in the superior court's ruling on Respondent-Intervenors' standing before the Board or by allowing intervention before the superior court, or with the due process afforded to Petitioner. We affirm the superior court's ruling on those issues.

Petitioner presented a *prima facie* showing of entitlement to a SUP. Respondent-Intervenors failed to offer substantial, material, and competent evidence

to rebut or overcome this showing. We reverse the superior court's affirmation of the Board's denial of Petitioner's SUP.

This case is remanded to the superior court for further remand to the Lee County Board of Adjustment to acknowledge Petitioner's application and *prima facie* showing for a SUP for the construction and operation of a quarry on the site, and to consider and detail any conditions, approvals, or permits from state or federal regulatory agencies required of Petitioner to comply with the Developmental Regulations in the UDO in order to issue the SUP. *It is so ordered.*

AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.

Judges STROUD and HUNTER concur.