IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-251

Filed: 6 November 2018

Buncombe County, No. 17 CVS 01188

PHG ASHEVILLE, LLC, Petitioner,

v.

CITY OF ASHEVILLE, Respondent.

Appeal by respondent from order entered 2 November 2017 by Judge William H. Coward in Buncombe County Superior Court. Heard in the Court of Appeals 20 September 2018.

> *Smith Moore Leatherwood LLP, by Kip D. Nelson and Thomas E. Terrell, Jr., for petitioner-appellee.*

> *City of Asheville City Attorney's Office, by City Attorney Robin Tatum Currin and Assistant City Attorney Catherine A. Hofmann, for respondent-appellant.*

TYSON, Judge.

The City of Asheville ("the City") appeals from an order of the superior court reversing the City's denial of a conditional use permit to PHG Asheville, LLC for the construction of a hotel. We affirm.

## I. Background

PHG Asheville, LLC ("Petitioner"), a North Carolina business entity, submitted an application to the City for a conditional use permit ("CUP") on 27 July 2016. Petitioner planned to construct an eight-story, 178,412 square foot Embassy

Suites hotel, with 185 rooms and on-site parking structure, to be built upon a 2.05 acre parcel located in downtown Asheville at 192 Haywood Street (the "Project"). The property is zoned "Central Business District," ("CBD"), which includes hotels as a permitted use. The property is also located within the "Downtown Design Review Overlay District" ("DDROD") under the City's Uniform Development Ordinance ("UDO"). Asheville, N.C., Code of Ordinances, § 7-5-9.1(a)(1) (2016).

Development projects designed to contain a gross floor area greater than 175,000 square feet to be built on parcels zoned CBD and located in the DDROD are subject to the City's "Level III site plan" review. This multi-level review includes a quasi-judicial hearing for issuance of a CUP from the Asheville City Council. Asheville, N.C., Code of Ordinances, § 7-5-9.1(a)(1),(7) (2016).

The UDO provides the following criteria for issuance of a CUP:

> Conditional use standards. The Asheville City Council shall not approve the conditional use application and site plan unless and until it makes the following findings, based on the evidence and testimony received at the public hearing or otherwise appearing in the record of the case:
>
> (1) That the proposed use or development of the land will not materially endanger the public health or safety;
>
> (2) That the proposed use or development of the land is reasonably compatible with significant natural and topographic features on the site and within the immediate vicinity of the site given the proposed site design and any mitigation techniques or measures proposed by the applicant;

(3) That the proposed use or development of the land will not substantially injure the value of adjoining or abutting property;

(4) That the proposed use or development of the land will be in harmony with the scale, bulk, coverage, density, and character of the area or neighborhood in which it is located;

(5) That the proposed use or development of the land will generally conform with the comprehensive plan, smart growth policies, sustainable economic development strategic plan, and other official plans adopted by the city;

(6) That the proposed use is appropriately located with respect to transportation facilities, water supply, fire and police protection, waste disposal, and similar facilities; and

(7) That the proposed use will not cause undue traffic congestion or create a traffic hazard.

Asheville, N.C., Code of Ordinances, § 7-16-2(c) (2016).

Petitioner's Project was reviewed by, and received recommendations for approval from, the City's planning department staff, the Technical Review Committee, the Downtown Commission, and the Asheville Planning & Zoning Commission. All of these recommendations were submitted to the City Council. The City Council conducted a quasi-judicial public hearing on Petitioner's CUP application on 24 January 2017.

Petitioner presented three expert witnesses, who testified and were questioned and who submitted detailed reports at the hearing. No evidence was offered in opposition to Petitioner's CUP application. One area resident present at the hearing

questioned whether the hotel could possibly create a sight line issue that could affect traffic safety.

At the close of the hearing, the City Council voted to deny Petitioner's application for a CUP. Three weeks later on 14 February 2017, the City issued an order containing 44 written findings of fact and 2 conclusions of law, detailing why it denied Petitioner's requested CUP. The City concluded the CUP should be denied because Petitioner did not produce competent, material and substantial evidence establishing criteria 1, 2, 3, 4, 5 or 7 of § 7-16-2(c) of the UDO. Aside from its additional 44 findings of fact, the City ultimately found:

> 2. In this case, the City Council finds that the CUP should be denied, for the following reasons, pursuant to UDO Section 7-16-2(c):
>
>> (1) The Applicant failed to produce competent, material and substantial evidence that the Hotel will not materially endanger the public health or safety;
>>
>> (2) The Applicant failed to produce competent, material and substantial evidence that the Hotel is reasonably compatible with significant topographic features of the site and within the immediate vicinity of the site given the proposed site design and any mitigation techniques or measures proposed by the applicant;
>>
>> (3) The Applicant failed to produce competent, material and substantial evidence that the Hotel will not substantially injure the value of the adjoining or abutting property;

(4) The Applicant failed to produce competent, material and substantial evidence that the Hotel will be in harmony with the scale, bulk, coverage, density, and character of the area or neighborhood in which it is located and, moreover, the evidence instead showed the Hotel would not be in harmony with the scale, bulk, coverage and character of the area and neighborhood.

(5) The Applicant failed to produce competent, material and substantial evidence that the Hotel will generally conform to the comprehensive plan, smart growth policies, sustainable economic development strategic plan and other official plans adopted by the City and, moreover, the evidence instead showed the Hotel would not generally conform to the City's 2036 Vision Plan; and

(7) The Applicant failed to produce competent, material and substantial evidence that the Hotel will not cause undue traffic congestion or create a traffic hazard.

On 16 March 2017, Petitioner filed a petition for writ of certiorari in superior court to seek review of the City's decision. The superior court entered an order after determining *de novo* Petitioner had established a *prima facie* case for entitlement to a CUP. The court concluded the City's decision to deny Petitioner a CUP was arbitrary and capricious, and it reversed and remanded the matter with an order to the City Council to grant Petitioner's requested CUP on 2 November 2017. The City timely appealed from the superior court's order.

## II. Jurisdiction

Jurisdiction lies in this Court from an appeal of right from a final judgment of the superior court. N.C. Gen. Stat. § 7A-27(b) (2017).

### III. Standard of Review

"Judicial review of town decisions to grant or deny conditional use permits is provided for in G.S. 160A-388(e), which states, *inter alia*, 'Every decision of the board shall be subject to review by the superior court by proceedings in the nature of certiorari.'" *Coastal Ready-Mix Concrete Co. v. Bd. Of Comm'rs*, 299 N.C. 620, 623, 265 S.E.2d 379, 381 (1980).

> [T]he task of a court reviewing a decision on an application for a conditional use permit made by a town board sitting as a quasi-judicial body includes:
>
> (1) [r]eviewing the record for errors in law,
>
> (2) [i]nsuring that procedures specified by law in both statute and ordinance are followed,
>
> (3) [i]nsuring that appropriate due process rights of a petitioner are protected including the right to offer evidence, cross-examine witnesses, and inspect documents,
>
> (4) [i]nsuring that decisions of town boards are supported by competent, material and substantial evidence in the whole record, and
>
> (5) [i]nsuring that decisions are not arbitrary and capricious.

*Id.* at 626, 265 S.E.2d at 383.

"The standard of review of the superior court depends upon the purported error." *Little River, LLC v. Lee Cty.*, __ N.C. App. __, __, 809 S.E.2d 42, 46 (2017) (citing *Morris Commc'ns Corp. v. Bd. of Adjustment of Gastonia*, 159 N.C. App. 598, 600, 583 S.E.2d 419, 421 (2003)). "When a party alleges the [decision-marking board's] decision was based upon an error of law, both the superior court, sitting as an appellate court, and this Court reviews the matter *de novo*, considering the matter anew." *Dellinger v. Lincoln Cty.*, __ N.C. App. __, __, 789 S.E.2d 21, 26 (2016) (citation omitted).

"When the petitioner questions (1) whether the agency's decision was supported by the evidence or (2) whether the decision was arbitrary or capricious, then the reviewing court must apply the whole record test." *ACT-UP Triangle v. Comm'n for Health Servs. of the State of N.C.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citation and quotation marks omitted). "The whole record test requires that the [superior] court examine all competent evidence to determine whether the decision was supported by substantial evidence." *Morris Commc'ns*, 159 N.C. App. at 600, 583 S.E.2d at 421. The initial issue of whether a petitioner has presented competent, material, and substantial evidence to obtain a special use permit is subject to *de novo* review. *Am. Towers, Inc. v. Town of Morrisville*, 222 N.C. App. 638, 641, 731 S.E.2d 698, 701 (2012).

"[T]he terms 'special use' and 'conditional use' are used interchangeably[.] . . . [A] conditional use or a special use permit 'is one issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist.'" *Concrete Co.,* 299 N.C. at 623, 265 S.E.2d at 381 (quoting *Humble Oil & Ref. Co. v. Bd. of Aldermen,* 284 N.C. 458, 467, 202 S.E.2d 129, 136 (1974) (other citation omitted)).

> A particular standard of review applies at each of the three levels of this proceeding—the [council], the superior court, and this Court. First, the [council] is the finder of fact in its consideration of the application for a special use permit. The [council] is required, as the finder of fact, to follow a two-step decision-making process in granting or denying an application for a special use permit. If an applicant has produced competent, material, and substantial evidence tending to establish the existence of the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. *If a prima facie case is established, [a] denial of the permit [then] should be based upon findings contra which are supported by competent, material, and substantial evidence appearing in the record.*

*Davidson Cty. Broad., Inc. v. Rowan Cty. Bd. of Comm'rs,* 186 N.C. App. 81, 86, 649 S.E.2d 904, 909 (2007) (emphasis supplied) (citation and internal quotation marks omitted), *disc. review denied,* 362 N.C. 470, 666 S.E.2d 119 (2008).

"When this Court reviews a superior court's order regarding a zoning decision by a [decision-making board], we examine the order to: '(1) determin[e] whether the [superior] court exercised the appropriate scope of review and, if appropriate, (2)

decid[e] whether the court did so properly.'" *Id.* at 87, 649 S.E.2d at 910 (citations omitted).

IV. Analysis

A petitioner's burden on an application for a CUP is well established. An applicant for a CUP must establish a *prima facie* case, by competent, material, and substantial evidence, meeting all the conditions in the zoning ordinance. *Humble Oil* 284 N.C. at 467, 202 S.E.2d at 136. "Material evidence" has been recognized by this Court to mean "[e]vidence having some logical connection with the facts of consequence or issues." *Innovative 55, LLC v. Robeson Cty.*, __ N.C. App. __, __, 801 S.E.2d 671, 676 (2017) (citing Black's Law Dictionary 638 (9th ed. 2009)). "Substantial evidence" has been defined to mean such relevant "evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted).

> It must do more than create the suspicion of the existence of the fact to be established. . . . [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury.

*Humble Oil,* 284 N.C. at 471, 202 S.E.2d at 137 (citations and quotation marks omitted).

It is well established that:

> When an applicant has produced competent, material, and substantial evidence tending to establish the existence of

> the facts and conditions which the ordinance requires for the issuance of a special use permit, *prima facie* he is entitled to it. A denial of the permit should be based upon findings *contra* which are supported by competent, material, and substantial evidence appearing in the record.

*Dellinger*, __ N.C. App. at __, 789 S.E.2d at 27 (citing *Humble Oil*, 284 N.C. at 468, 202 S.E.2d at 136).

"[G]overnmental restrictions on the use of land are construed strictly in favor of the free use of real property." *Morris Commc'ns v. City of Bessemer Zoning Bd. of Adjustment*, 365 N.C. 152, 157, 712 S.E.2d 868, 871 (2011).

Council members sitting in a quasi-judicial capacity must base their decision to grant or deny a CUP on objective factors, which are based upon the evidence presented, and not upon their subjective preferences or ideas. *See id.* "A city council may not deny a conditional use permit in their unguided discretion or because, in their view, it would adversely affect the public interest." *Howard v. City of Kinston*, 148 N.C. App. 238, 246, 558 S.E.2d 221, 227 (2002). "[T]he denial of a conditional use permit may not be based on conclusions which are speculative, sentimental, personal, vague or merely an excuse to prohibit the requested use." *Id.*

Petitioner is not seeking a rezoning, but rather a CUP to conduct a use that is expressly permitted in the CBD zoning district by the UDO. *See* Asheville, N.C., Code of Ordinances, § 7-5-9.1(a)(1). The legislative and policy decision of whether to allow a hotel use in a CBD zoning district has already been made by the City Council in

adopting the UDO ordinance. "A conditional use permit is one issued for a use which the ordinance expressly permits in a designated zone upon proof that certain facts and conditions detailed in the ordinance exist." *Woodhouse v. Bd. of Comm'rs of the Town of Nags Head*, 299 N.C. 211, 215, 261 S.E.2d 882, 886 (1980) (citation and quotation marks omitted).

Governing bodies sitting in a quasi-judicial capacity are performing as judges and must be neutral, impartial, and base their decisions solely upon the evidence submitted. *See Handy v. PPG Indus.*, 154 N.C. App. 311, 321, 571 S.E.2d 853, 860 (2002) ("Neutrality and the appearance of neutrality are equally critical in maintaining the integrity of our judicial and quasi-judicial processes"). The property rights of CUP applicants must be respected and protected and the due process procedures must be followed.

A quasi-judicial hearing is a judicial proceeding and not a legislative function. *See Butterworth v. City of Asheville*, 247 N.C. App. 508, 511, 786 S.E.2d 101, 105 (2016) ("In making quasi-judicial decisions, the decision-maker must exercise discretion of a judicial nature." (citation and quotations omitted)). It is not an occasion to revisit the zoning or permitted uses of a property. Council members' personal or policy preferences are irrelevant and immaterial. *See Sun Suites Holdings, LLC v. Bd. of Aldermen of Town of Garner*, 139 N.C. App. 269, 276, 533 S.E.2d 525, 530 (2000) ("speculative assertions or mere expression of opinion about

the possible effects of granting a permit are insufficient to support the findings of a quasi-judicial body").

In quasi-judicial proceedings, no board or council member should appear to be an advocate for nor adopt an adversarial position to a party, bring in extraneous or incompetent evidence, or rely upon *ex parte* communications when making their decision. It is incumbent upon city and county attorneys to advise and inform decision-making boards of their proper roles and procedures required in quasi-judicial proceedings.

### A. *Superior Court Applied the Correct Standard of Review*

The City argues the superior court misapplied the standards of review in assessing the City's written decision to deny Petitioner a CUP. The City contends the superior court "expressly and erroneously applied *de novo* review in evaluating whether the evidence was 'sufficient'" based upon the court's conclusion 4:

> 4. Exercising de novo review, the Court concludes as a matter of law that the evidence presented by PHG and other supporting witnesses was competent, material and substantial and sufficient to establish a prima facie case of entitlement to a conditional use permit. In deciding otherwise, the Council made an error of law. A court reviews "de novo the initial issue of whether the evidence presented by a petitioner met the requirement of being competent, material, and substantial." *Blair Investments, LLC v. Roanoke Rapids City Council*, 231 N.C. App. 318, 321, 752 S.E.2d 524, 527 (2013).

This conclusion 4, and the superior court's citation to this Court's decision in

*Blair Investments,* clearly shows the superior court appropriately applied *de novo* review in determining whether Petitioner had presented "competent, material, and substantial" evidence to establish a *prima facie* case. When a petitioner meets its initial burden to present competent, material, and substantial evidence that it is entitled to a CUP, petitioner has established a *prima facie* case to issuance of the CUP. *See Am. Towers*, 222 N.C. App. at 641, 731 S.E.2d at 701 ("We must determine whether petitioner presented competent, material, and substantial evidence. If so, then petitioner has made out a *prima facie* case").

Presuming *arguendo*, the superior court correctly determined Petitioner's evidence was competent, material, and substantial, then Petitioner's evidence was necessarily "sufficient" to make out a *prima facie* case. *See id.* The superior court's order shows it did not weigh evidence, but properly applied *de novo* review to determine the initial legal issue of whether Petitioner had presented competent, material, and substantial evidence. The City's argument is overruled.

The City also argues the superior court improperly made a *de novo* review of the evidence without applying whole record review to the City Council's 44 findings of fact. The City asserts Petitioner was required to specifically challenge the City Council's 44 findings of fact before the superior court. We disagree.

In *Little River*, the Lee County Board of Adjustment made 15 findings of fact to support its denial of the petitioner's requested special-use permit. __ N.C. App. __,

809 S.E.2d at 42. This Court determined the Petitioner had met its *prima facie* showing of entitlement to the SUP under *de novo* review. *Id.* at __, 809 S.E.2d at 52. Rather than specifically addressing each of the Board of Adjustment's findings of fact, this Court stated: "Many of the Board's findings of fact to support its conclusions are based solely upon opponents' evidence and wholly ignore the evidence presented to make a *prima facie* showing by Petitioner." *Id.* at __, 809 S.E.2d at 50.

This Court then held: "The Board's findings are unsupported by competent, material, and substantial evidence, and its conclusions thereon are, as a matter of law, erroneous. Respondent-Intervenors did not present substantial, material, and competent evidence to rebut Petitioner's *prima facie* showing of entitlement to a SUP." *Id.* at __, 809 S.E.2d at 51. Here, as in *Little River*, it was unnecessary for the superior court, and is unnecessary for this Court, to specifically address each of the City Council's 44 findings of fact, because no "competent, material, and substantial evidence" *contra* was presented to rebut Petitioner's *prima facie* showing. *Id.*

"[F]indings of fact are not necessary when the record sufficiently reveals the basis for the decision below or *when the material facts are undisputed and the case presents only an issue of law*." N.C. Gen. Stat. § 160A-393(l)(2) (2017) (emphasis supplied). The City Council's 44 findings of fact were unnecessary, improper, and irrelevant. No competent, material, and substantial evidence was presented to rebut Petitioner's *prima facie* case, and no conflicts in the evidence required the City

Council to make findings to resolve any disputed issues of fact. *See Dellinger,* __ N.C. App. at __, 789 S.E.2d at 27.

Under the terms of its own order, the City Council did not have to make 44 findings of fact to weigh or resolve conflicts in the evidence. The City Council made the initial legal determination Petitioner had failed to present competent, material, and substantial evidence to establish a *prima facie* case of entitlement to a CUP. Once the City Council made this legal determination, it was unnecessary and erroneous to make 44 findings of fact on unchallenged evidence beyond the required ultimate findings on the 7 criteria specified by the UDO. Asheville, N.C., Code of Ordinances, § 7-16-2(c).

Additionally, once the superior court made the initial *de novo* determination that Petitioner had presented competent, material, and substantial evidence to establish a *prima facie* case, and no competent, material, and substantial evidence *contra* was presented in opposition or rebuttal to Petitioner's evidence, Petitioner was entitled to a CUP as a matter of law. *See Dellinger*, __ N.C. App. at __, 789 S.E.2d at 27. Further, any purported whole record review by the superior court of the City Council's extraneous and superfluous 44 "findings of fact" would have been unnecessary.

The City's argument that Petitioner was required to assign specific error to any of the 44 extraneous and superfluous findings of fact is without merit. The City's

argument the trial court misapplied its standards of review by not conducting whole record review of the City Council's unnecessary 44 findings of fact on unchallenged and unrebutted evidence is overruled.

### B. *Preservation of Arguments*

Before this Court, the City only argues Petitioner has failed to establish 3 of the 7 required criteria for issuance of a CUP under the UDO. These criteria are 3, 4, and 7. Asheville, N.C., Code of Ordinances, § 7-16-2(c). The City Council denied the requested CUP on the grounds Petitioner had failed to establish a *prima facie* case of entitlement to the CUP under criteria 1, 2, 3, 4, 5, and 7. The City has abandoned any arguments related to the superior court's conclusion of Petitioner's *prima facie* satisfaction of criteria 1, 2, 5 and 6. N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned"). Petitioner's *prima facie* compliance with criteria 1, 2, 5 and 6 is unchallenged and established as a matter of law. *Id.*

### C. *Criteria 3: Impact on Adjoining or Abutting Property*

The City contends Petitioner has failed to meet its burden of establishing a *prima facie* case of entitlement to a CUP, because it has not presented material evidence. The City concedes Petitioner's expert testimony and reports were properly admitted without objection and this evidence was competent and substantial. "Material evidence" is defined to mean "[e]vidence having some logical connection

with the facts of consequence or the issues." *Innovative 55*, __ N.C. App. at __, 801 S.E.2d at 676 (internal citation omitted).

The City argues the superior court erred by reversing the City Council's conclusion that Petitioner had failed to meet its burden of producing competent, material, and substantial evidence that the Project "will not substantially injure the value of adjoining or abutting property." Asheville, N.C., Code of Ordinances, § 7-16-2(c)(3).

The City contends Defendant's expert witness's uncontradicted testimony and report were not material, because the City Council found inadequacies in the methodologies employed by the expert. The City cites this Court's opinions in *American Towers* and *SBA v. City of Asheville City Council* to support its assertions that the City Council could determine Petitioner failed to establish a *prima facie* case under criteria 3 because of "perceived inadequacies" in Petitioner's expert's analysis. We disagree.

In *American Towers*, an applicant applied to the Town of Morrisville for a special use permit to erect a telecommunications tower. 222 N.C. App. at 642, 731 S.E.2d at 702. One of the criteria for obtaining a special use permit was "that the proposed development or use will not substantially injure the value of adjoining property." *Id.* At a hearing before the town board, the applicant offered the testimony and report of an appraiser, who had been admitted as an expert witness. *Id.* at 639,

731 S.E.2d at 700. No expert testimony was presented to rebut the applicant's expert appraiser. *Id.*

The town board denied the applicant's requested special use permit based, in part, upon the applicant's failure to establish a prima facie case that the tower "would not substantially injure the value of adjoining properties." *Id.* at 646, 731 S.E. 2d at 704. The superior court affirmed the town board's decision to deny the special use permit. *Id.* at 638, 731 S.E.2d at 700.

This Court affirmed the superior court's order upholding the town board's denial of the special use permit. *Id.* This Court recited the town board's reasons for concluding the applicant had failed to establish a *prima facie* case that the tower "would not substantially injure the value of adjoining properties[,]" as follows:

> 1) the report was not benchmarked against other developments or against the market in general, 2) in the two subdivisions studied by Mr. Smith the cell tower was in place before the neighboring homes were built. (as opposed to the case at hand here), 3) the report did not attempt to study the effect of possible devaluation of property, and 4) the report did not take into account any potential loss of value due to the loss of "curb appeal" with the tower rising above the adjoining residential neighborhood.

*Id.* at 645, 731 S.E.2d at 703.

This Court in *American Towers* summarized the Court's prior holding in *SBA*, as follows:

> This Court was faced with a virtually identical fact

situation in the case of *SBA v. City of Asheville City Council.* 141 N.C. App. 19, 539 S.E.2d 18 (2000). In *SBA*, one of the bases for rejecting the application for a conditional use permit to erect a telecommunications tower was the failure of petitioner to establish a *prima facie* case that the value of adjoining properties would not be adversely affected. We noted that:

> City Code § 7-16-2(c)(3) requires a showing that the value of properties adjoining or abutting the subject property would not be adversely affected by the proposed land use. The City's Staff Report submitted to respondent expressed concern that petitioners' Property Value Impact Study did not address properties in the vicinity of the subject property, but rather focused on towers and properties in other parts of the City. Petitioners' evidence was about other neighborhoods and other towers in the City. Their study did not even include information with respect to an existing cellular tower a short distance from the proposed site that potentially affected the same neighborhoods. Petitioners simply did not meet their burden of demonstrating the absence of harm to property adjoining or abutting the proposed tower as required by § 7-16-2(c)(3).

*Id.* at 27, 539 S.E.2d at 23.

> Based upon the holding of *SBA*, respondent was permitted to find that petitioner failed to present a *prima facie* case based upon perceived inadequacies in the methodology of its expert. We are bound by this ruling. *In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 36 (1989).

*Id.* at 645-46, 731 S.E.2d at 704.

Here, Petitioner presented the testimony and report of Tommy Crozier, who was tendered and admitted as an expert witness in land appraisal and valuation

without objection. Crozier certified that his report was prepared in conformity with the "Uniform Standards of Professional Appraisal Practice" ("USPAP"). Crozier's oral testimony and report identified three properties, which directly adjoin or abut the property comprising the Project, and two properties located directly across the street. The adjoining and abutting properties are Carolina Apartments; First Church of Christ, Scientist; and the Asheville Broad Center. The properties across the street from the Project are a Hyatt Place hotel and an office building occupied by the Salvation Army. The report states in relevant part:

> The proposed hotel will consist of a new, ±$25M project located amidst 50+ year old structures that have historically been valued for tax purposes well below $3.0M. *The presence of the new hotel should meaningfully enhance the values of surrounding properties. This Principle of Progression has already materialized in the immediate area, evidenced by record high transaction prices since the nearby Hotel Indigo opened in 2009.* (emphasis supplied).
> . . .
>
> There have been numerous examples of property value enhancement as the result of revitalization (and as a result of new hotel development specifically) in comparable leisure markets like Charleston, Wilmington, Chattanooga, Savannah and Greenville, SC[.]

Crozier's report also contains an estimated value of $50.00 per square foot for the implied land values of the properties adjoining the Project. Crozier's estimate was based upon the sale prices for "vacant sites or improved sites acquired for redevelopment where the existing improvements were considered to have little to no

contributory value." Crozier's report compares the $50.00 per square foot implied land values of the adjoining properties to the substantially lower assessed *ad valorum* values from the Buncombe County tax assessment conducted prior to Petitioner's purchase of the subject property located at 192 Haywood Street.

The City's reliance upon *SBA* and *American Towers* is misplaced. Neither of these Court's opinions in *SBA* nor *American Towers* contains any indication that the expert reports at issue in those cases were prepared in accordance with the applicable USPAP standards of the property appraisal licensure or other governing bodies. *See SBA*, 141 N.C. App. at 27, 539 S.E.2d at 18; *Am. Towers*, 222 N.C. App. at 645-46, 731 S.E.2d 698, 703-04.

Additionally, the expert reports in *SBA* and *American Towers* were immaterial to the issue of whether the telecommunications towers would adversely impact the value of adjoining property. The expert witness' report in *American Towers* was based upon an analysis of the values of adjoining properties built later than neighboring cell phone towers. *Am. Towers*, 222 N.C. App. at 645, 731 S.E.2d at 703 ("[I]n the two subdivisions studied by Mr. Smith the cell tower was in place before the neighboring homes were built.").

The expert witness' report in *SBA* "did not address properties in the vicinity of the subject property, but rather focused on towers and properties in other parts of the City." *SBA*, 141 N.C. App. at 27, 539 S.E.2d at 23. Unlike the report in *SBA*, Crozier's

findings and conclusions specifically analyzes and addresses the values of properties adjoining, abutting, and neighboring the Project in Asheville.

Crozier certified that "[t]he reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics & Standards of Professional Appraisal Practice of the Appraisal Institute, which includes the Uniform Standards of Professional Appraisal Practice." No competent, material, and substantial expert evidence *contra* was presented at the hearing to show Crozier's analysis was unsound or utilized an improper methodology.

Any competent, material, and substantial evidence to rebut Crozier's admitted expert testimony and report would have to have been presented by an expert witness in land valuation. N.C. Gen. Stat. § 160A-393(k)(3)(a) (2017) ("The term 'competent evidence,' as used in this subsection, shall not be deemed to include the opinion testimony of lay witnesses as to . . . [t]he use of property in a particular way would affect the value of other property"). The City Council's lay notion that Crozier's analysis is based upon an inadequate methodology does not constitute competent evidence under the statute to rebut his expert testimony and report. *Innovative 55*, __ N.C. App. at __, 801 S.E.2d at 678 ("Speculative and general lay opinions and bare or vague assertions do not constitute competent evidence before the [decision-making body] to overcome the applicant's *prima facie* entitlement to the CUP").

Crozier's admitted and uncontroverted testimony and report meets the low threshold of being "material evidence" as his analysis has a "logical connection" to whether the Project "will impair the value of adjoining or abutting property." *Id.* at __, 801 S.E.2d at 676. Crozier's analyses and conclusions that: (1) adjoining and nearby property values in the neighborhood of the Project have increased since the Hotel Indigo opened in 2009; (2) values of neighboring properties in other markets have appreciated since the hotels were opened; and, (3) implied values of the adjoining properties have substantially increased since the neighboring Hyatt Hotel opened, all reinforce a "logical connection" to whether the Project will affect the value of "adjoining or abutting property." Crozier's report and testimony constitutes material, as well as competent and substantial, evidence to show *prima facie* compliance with criteria 3. The City's argument that Crozier's testimony and report are not "material" is contrary to the statute and controlling precedents, and is overruled.

D. *Criteria 4: Harmony with the Neighborhood*

The City also argues Petitioner failed to present material evidence "[t]hat the proposed use or development of the land will be in harmony with the scale, bulk, coverage, density, and character of the area or neighborhood in which it is located." Asheville, N.C., Code of Ordinances, § 7-16-2(c)(4).

Under our binding precedents, "The inclusion of the particular use in the ordinance as one which is permitted under certain conditions, is equivalent to a legislative finding that the prescribed use is one which is in harmony with the other uses permitted in the district." Woodhouse, 299 N.C. at 216, 261 S.E.2d at 886. "[W]here a use is included as a conditional use in a particular zoning district, a *prima facie* case of harmony with the area is established." *Habitat for Humanity of Moore Cty., Inc v. Bd. of Comm'rs*, 187 N.C. App. 764, 768, 653 S.E.2d 886, 888 (2007).

Here, the City does not dispute that a hotel is a permitted "use" in the CBD zoning district under the UDO. The City argues that even though the *use* of the subject property as a hotel in the CBD is a permitted use, the *development* of a hotel is not presumed to "be in harmony with the area." The statute, long-established precedents and the UDO contain no basis that "development" of a use is to be treated, analyzed, or distinguished from the "use" itself for purposes of criteria 4. Asheville, N.C., Code of Ordinances, § 7-16-2(c)(4) ("the proposed use or development . . . will be in harmony"); *see, e.g. Petersilie v. Town of Boone Bd. of Adjustment,* 94 N.C. App. 764, 767, 381 S.E.2d 349, 351 (1989) (using "use" and "development" interchangeably in discussing special-use permit ordinance similar to Asheville's UDO); *Habitat*, 187 N.C. App. at 768, 653 S.E.2d at 888 (treating "use" the same as "development" in applying presumption that use is in harmony with an area when it is included as a permitted use in the zoning district).

In addition, Petitioner presented the testimony of an expert witness, Blake Esselstyn. Esselstyn prepared a map showing the location of similar structures in the area compared to the proposed Project. He testified that the "scale, bulk and coverage" of the Project would be similar to a number of these similar structures. The density of the Project would be similar to the Carolina Apartments, Vanderbilt Apartments, and Battery Park Apartments located within the area of the Project. Esselstyn also testified that the contemporary architectural style of the Project would be harmonious with the area.

Petitioner's "use or development" of the property for the conditional use of a hotel in the permitted CBD zone establishes a *prima facie* case of harmony with the area. *Habitat*, 187 N.C. App. at 768, 653 S.E.2d at 888. Although the City asserts "use" should be distinguished from "development" in the UDO, Petitioner's expert witness, Esselstyn, established a *prima facie* case of harmony of the Project's use and development within the CBD area under criteria 4. The City's argument is overruled.

### E. *Criteria 7: Undue Traffic Congestion or Traffic Hazard*

The City also argues Petitioner failed to present material evidence to establish a *prima facie* case under criteria 7. Criteria 7 requires: "That the proposed use will not cause undue traffic congestion or create a traffic hazard." Asheville, N.C., Code of Ordinances, § 7-16-2(c)(7).

Petitioner presented the testimony and report of traffic engineer Kevin Dean, who was accepted and admitted as an expert witness without objection at the City Council hearing. Dean's report contains the data and results from a traffic analysis he conducted on the streets and intersections adjacent to the Project. Dean testified he had "coordinated with the City's traffic engineer, and [were] told that all we needed to provide was the trip generation table . . . as well as our anticipated distribution of those trips." Both the trip generation table and trip distributions were included in Dean's report.

Dean performed a "capacity analysis" and "collected peak hour traffic counts on [Thursday,] November 10th" 2016. Dean testified he performed the traffic analysis on a Thursday to accord with industry standards, which specify traffic should be analyzed on days between Tuesday and Thursday.

Proposed traffic to and from the Project was estimated based upon industry standard data promulgated by "the Institute of Transportation Engineers." Dean's analysis showed the Project would increase the delays caused by traffic at nearby intersections by "five percent . . . or less." Dean testified that if his analysis had been performed on days when there was more traffic volume on the roads, the estimated traffic impact generated from the Project would impact a smaller percentage of overall traffic, due to higher traffic volumes at those intersections from sources other than the Project.

Dean's report indicates and concludes that "[w]ith the hotel in place, all of the study intersections are expected to continue to operate at acceptable levels of service with only minor increases in delay. Some of the intersections are expected to experience a reduction in overall delay. . . ."  Additionally, Dean concluded "traffic entering the site should not conflict with traffic exiting the site."

Based upon his analysis, Dean testified to his professional opinion that the Project "will not cause undue traffic congestion or a hazard[.]"

Despite Dean's expert testimony, and the absence of any expert testimony to the contrary, the City Council found that Dean's analysis was deficient, in part, because: (1) Dean's traffic analysis only included data for November 10th and not for other times of the year; (2) Dean was not aware of whether environmental conditions could have affected traffic volumes; (3) Dean did not conduct his traffic analysis during the weekend; and (4) the traffic analysis "did not account for traffic that will be generated by future hotels and apartments in the downtown area. . . ."

The City Council also found Dean's analysis was deficient because a "sight distance check" was not conducted to determine if a "blind hill with limited visibility in the vicinity of the Hotel's parking deck's entrance and exit" would "endanger driver or pedestrian safety."  This "finding" is apparently based upon a question posed by Charles Rawls, a lay member of the public, at the City Council hearing.  Rawls

questioned whether there was a potential sight distance problem for traffic coming over a purportedly blind hill near the Project's planned parking deck.

No competent, material, and substantial evidence was presented to refute Dean's traffic analysis. Dean testified his study was conducted in accordance with industry standards and used standard industry data and methods. The speculations of lay members of the public and unsubstantiated opinions of City Council members do not constitute competent evidence *contra* under the statute or precedents to rebut Dean's traffic analysis. N.C. Gen. Stat. § 160A-393(k)(3)(b) ("'competent evidence,' as used in this subsection, shall not be deemed to include the opinion testimony of lay witnesses as to . . . [t]he increase in vehicular traffic resulting from a proposed development would pose a danger to the public safety"); *Howard*, 148 N.C. App. at 246, 558 S.E.2d at 227 ("denial of a conditional use permit may not be based on conclusions which are speculative, sentimental, personal, vague or merely an excuse to prohibit the requested use").

Dean's expert testimony and admitted report clearly constitute "material evidence" because they bear "a logical connection" to the issues of whether Petitioner's Project will impact traffic congestion or create a traffic hazard. *Innovative 55*, __ N.C. App. at __, 801 S.E.2d at 676. Although lay members of the City Council may disagree with Petitioner's experts' testimony and reports, that does not rebut the legal determination of whether the evidence is "material." *See id.* at __, 801 S.E.2d at

675 ("Whether . . . material . . . evidence is present in the record is a conclusion of law." (citation omitted)). The City has failed to show that any of Petitioner's experts' testimony and evidence was incompetent, immaterial, unsubstantial, or rebutted by contrary evidence meeting the same statutory and precedential standards to deny the CUP. The City's arguments are overruled.

## V. Conclusion

Applying *de novo* review, the trial court properly concluded Petitioner had presented a *prima facie* showing of entitlement to a CUP to construct their hotel as a permitted use in the CBD zone. Petitioner satisfied its burden of production and, in the absence of competent, material, and substantial evidence to the contrary, is entitled to issuance of the CUP as a matter of law. *See Dellinger*, __ N.C. App. at __, 789 S.E.2d at 27. The City Council's denial of the application was not based upon any competent, material, and substantial evidence *contra* to rebut the Petitioner's *prima facie* showing.

Once the superior court made the initial *de novo* determination that Petitioner had presented competent, material, and substantial evidence to establish a *prima facie* case, and no competent, material, and substantial evidence *contra* was presented in opposition or rebuttal to Petitioner's evidence, the superior court properly reversed and remanded for issuance of the CUP as a matter of law. *See id.* Further, any purported whole record review by the superior court of the City Council's

extraneous and superfluous 44 "findings of fact" was unnecessary.

The superior court's order reversing the City's denial of Petitioner's application and remanding for issuance of the CUP is affirmed. This cause is remanded to the superior court for further remand to the City to issue the CUP to Petitioner. *It is so ordered.*

AFFIRMED.

Judges INMAN and BERGER concur.